GERMANIA IMPORTING CO. *v.* UNITED STATES (No. 1572).[1]

1. TISSUE PAPER, WHAT IS—WEIGHT NOT THE TEST.

   Thin, unsized paper of fine, soft texture, silky to the touch, translucent, and to a limited extent transparent, used for wrapping articles, especially those which the manufacturer does not wish to tarnish, commonly known to the trade as tissue paper, weighing 10¼ to 10½ pounds per ream of 480 sheets measuring 20 by 30 inches, is properly classified as tissue paper, notwithstanding the fact that its weight is much greater than that of the ordinary tissue paper.

2. SAME—HOW DUTIABLE.

   Such paper is more specifically classified as " tissue paper," under paragraph 323, tariff act of 1913, than as " wrapping paper," under paragraph 328, or " papers * * * not specially provided for," under paragraph 332.

United States Court of Customs Appeals, December 6, 1915.

APPEAL from Board of United States General Appraisers, Abstract 37725.

[Affirmed.]

*Hatch & Clute* (*Edward S. Hatch* and *Walter F. Welch* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise now in question was classified by the collector as " tissue paper," and accordingly was assessed with duty at the rate of 30 per cent ad valorem under paragraph 323 of the tariff act of 1913.

The importers protested against the classification, claiming assessment of the merchandise at the rate of 25 per cent ad valorem as " wrapping paper, not specially provided for," under paragraph 328, or alternatively at 25 per cent ad valorem as " all papers * * * not specially provided for," under paragraph 332 of the same act.

The Board of General Appraisers overruled the protest, and the importers now appeal.

The following is a copy of the several paragraphs above cited:

323. Papers commonly known as copying paper, stereotype paper, bibulous paper, tissue paper, pottery paper, letter-copying books, wholly or partly manufactured, crêpe paper and filtering paper, and articles manufactured from any of

[1] Reported in T. D. 35988 (29 Treas. Dec., 751).

the foregoing papers or of which such paper is the component material of chief value, 30 per centum ad valorem.

328. Jacquard designs on ruled paper, or cut on Jacquard cards, and parts of such designs, cardboard and bristol board, press boards or press paper, paper hangings with paper back or composed wholly or in chief value of paper, and wrapping paper not specially provided for in this section, 25 per centum ad valorem.

332. Papers or cardboard, cut, die cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, or other forms, and all postcards, not including American views, plain, decorated, embossed, or printed, except by lithographic process, and all papers and manufactures of paper or of which paper is the component material of chief value, not specially provided for in this section, 25 per centum ad valorem.

The importers contend that the present merchandise should not be assessed with duty as tissue paper under paragraph 323, *supra*, unless it be found that the article actually is tissue paper and also that it is commonly known as such. The Government contends that the latter requirement is not essential under the paragraph, but maintains, nevertheless, that the testimony clearly establishes both facts.

The following definitions of the term in question are taken from standard authorities:

Standard Dictionary:

*Tissue paper.*—Very thin, unsized, almost transparent paper, for wrapping delicate articles, protecting engravings, etc., so called originally not from its texture, but from its use in separating the folds of fine silk tissue.

Century Dictionary:

*Tissue paper.*—A very thin paper of fine and soft texture, used for wrapping valuable or delicate articles, for polishing fine surfaces, for protecting engravings in books, etc.; silk paper, silver paper.

Worcester's Dictionary:

*Tissue paper.*—A very thin, unsized paper, for wrapping and packing.

Webster's Dictionary:

*Tissue paper.*—Very thin, gauzelike paper, used for protecting engravings in books, for wrapping up delicate articles, etc.

Knight's Mechanical Dictionary:

*Tissue paper.*—A very thin, gauzelike paper made of several sizes, and used for the protection of engravings, for wrapping fine and delicate articles.

It appears from the record that the present merchandise is a thin, unsized paper of fine, soft texture, and is silky to the touch; it is translucent and to a limited extent transparent: it is used for wrapping articles, especially those which the manufacturer does not wish to tarnish. About 90 per cent of all tissue paper is used as wrapping paper, the antitarnishing quality thereof resulting from special processes pursued in its manufacture which make it free from sulphur or

other chemical which would tarnish a plated or genuine article of metal. It seems that tissue paper ordinarily weighs about 7 pounds to a ream of 480 sheets measuring 20 by 30 inches; indeed, it is said that 95 per cent of the standard tissue papers upon the market do not exceed that weight. The present article weighs $10\frac{1}{4}$ to $10\frac{1}{2}$ pounds per ream of such dimensions, being substantially in excess of what may be called the usual weight. Nevertheless, it sufficiently appears from the testimony that weight alone is not decisive of the question of identity, and that there are other papers, well known to the trade as tissue papers, which weigh quite as much as the paper now in question. Among the exhibits are three samples of paper weighing each $10\frac{1}{2}$ pounds per ream of 480 sheets 20 by 30 inches, which are undoubtedly tissue papers and are commonly known as such in the trade. It should also be noted that none of the definitions above quoted limits the term in question to papers of any given weight.

We do not find it necessary to review in detail the testimony of the several witnesses, but we are satisfied upon the entire record, including both testimony and exhibits, that the present merchandise is in fact tissue paper, and also that it is commonly known as such in the trade. It is true that this paper is heavier than the tissue papers which are most commonly used, and which are therefore best known in the markets. This fact, however, is not inconsistent with the claim that the present paper when it does appear in trade or use is commonly known as tissue paper and is used as such. Accepting as we do the importers' interpretation that the provision in question covers only such paper as is commonly known as tissue paper, nevertheless it does not follow that it should be restricted in operation to those kinds of tissue papers which are most commonly used and therefore are best known in the trade, but it would also include such tissue papers as are less commonly used, but which nevertheless when bought and sold are ordinarily known under that name.

The importers' counsel call the court's attention to paragraph 397 of the tariff act of 1897, also to paragraph 410 of the tariff act of 1909, and contend that the language of those paragraphs indicates that Congress in using the term "tissue paper" in tariff legislation intended that it should not apply to any paper weighing more than 10 pounds to the ream of 480 sheets measuring 20 by 30 inches. Those paragraphs were the respective predecessors of paragraph 323, *supra*, and levied duty upon "papers commonly known as copying paper, stereotype paper, papers known as bibulous paper, tissue paper, pottery paper, and all similar papers." A duty of 6 cents per pound and 15 per cent ad valorem was levied by the respective paragraphs upon all of the papers thus described "weighing not over 6 pounds to the ream of 480 sheets, on a basis of 20 by 30 inches," the same paragraphs levying a duty of only 5 cents per pound and

15 per cent ad valorem upon such papers "if weighing over 6 pounds and not over 10 pounds to the ream." No provision was made in either of the two paragraphs above cited for papers of the described kinds weighing more than 10 pounds to the ream. The foregoing quotations are from the act of 1897, from which the act of 1909 does not substantially differ.

It is true, upon the one hand, that these provisions of the tariff acts of 1897 and 1909, respectively, are consistent with the importers' contention that Congress understood that there were no tissue papers which weighed more than 10 pounds to such a ream. Upon the other hand, however, Congress may have intended in those acts simply to leave such tissue papers as exceeded that weight to the n. s. p. f. clauses of the acts. And, furthermore, the absence from the present act of any reference to the weight of the papers in question may imply that the legislative attention had been called to papers of the described classes which exceeded in weight the specifications of the preceding paragraphs, and that the classification of such papers by weight had been omitted from the act of 1913 because of that fact. The former paragraphs, therefore, do not afford much assistance in construing the present one in the particulars now in question.

It appears, therefore, that the present merchandise responds both to the *eo nomine* designation under which it was assessed and also to the descriptive n. s. p. f. designation under which the importers claim assessment for the article. The former of these is plainly the more specific and consequently was rightly applied by the collector.

The decision of the board sustaining the assessment is *affirmed*.