**AMERICAN VIKING CORP.**, Sieling & Jarvis Corp.

v.

**UNITED STATES.**

C. D. 1830;  Protest No. 214594–K.

United States Customs Court, Third Division.

Dec. 6, 1956.

Sharretts, Paley & Carter, New York City (Howard Clare Carter and Richard F. Weeks, New York City, of counsel), for plaintiffs.

George Cochran Doub, Asst. Atty. Gen. (Dorothy C. Bennett, Trial Atty., New York City), for defendant.

Before JOHNSON and DONLON, Judges.

JOHNSON, Judge.

This suit involves an entry, filed at the port of Philadelphia on October 11, 1951, pursuant to section 466 of the Tariff Act of 1930, 19 U.S.C.A. §§ 257, 258, infra, covering numerous repairs made between 1949 and 1951, inclusive, to the S. S. St. Christopher, a vessel documented under the laws of the United States. Some of these repairs were found to have been necessitated by stress of weather or other casualty and were granted free entry, but duty was levied upon the balance.

The protest before us is limited to the collector's assessment of duty on the cost of repairs made at Durban between April 7 and June 20, 1951, at Brest between August 3 and August 8, 1951, and at Algiers between August 13 and August 22, 1951. It is claimed, first, that the vessel, while in the regular course of her voyage, was compelled by casualty, within the meaning of said section 466, to put into the above-mentioned ports to make repairs in order to secure the safety and seaworthiness of the vessel and that the collector should have remitted or refunded such duties, pursuant to the authority vested in him by section 4.14 (j) of the Customs Regulations of 1943, as amended, Reorganization Plan No. 26 of 1950, and Customs Delegation Order No. 1, 87 Treas.Dec. 350, T.D. 53161. In the alternative, it is claimed that duties should not have been assessed upon items which were not equipments purchased for, or the repair parts or materials to be used, or the expenses of repairs, within the meaning of said section 466.

When this case was called for trial, counsel for the Government moved to dismiss the first claim in the protest on the ground that the authority to grant a remission of duties assessed under said section 466, has been vested exclusively in the Secretary of the Treasury and that this court has no jurisdiction to review his action. Counsel for the plaintiffs argued that, by reason of Reorganization Plan No. 26 of 1950, 5 U.S.C.A. following section 133z–15, and the delegation of authority made thereunder, the function of the Secretary of the Treasury under section 466 has been transferred to the collector and that, under the tariff act, all actions of collectors with respect to the rate and amount of duties are subject to review by this court. Decision on the motion was reserved for the division.

Counsel for the Government also moved to strike from the papers in the protest jacket importer's petition for remission of duties and the evidence presented in support thereof. At that time, these papers had not been offered ·in evi-

dence. The motion to strike was, therefore, out of order and is denied. Binney & Smith Co. v. United States, 27 Treas. Dec. 146, 147–8, T.D. 34726.

■ Later, during the course of the trial, counsel for the plaintiffs offered in evidence the entry and related papers for the purpose of proving compliance with the regulations with respect to the entry of the vessel and not for the truth of anything stated therein. Counsel for the Government did not object to the entry and the papers showing the collector's actions in passing upon it, but objected to admission of the documentary matter submitted to the collector's office in connection with the petition filed, pursuant to section 466, infra. In view of the Government's objection, the affidavits and other papers attached to the petition may not be admitted as evidence herein. Cintes v. United States, 18 C.C.P.A., Customs, 361, T.D. 44614, and cases cited; Thornley & Pitt v. United States, 19 C.C.P.A., Customs, 221, T.D. 45325; W. T. Grant Co. v. United States, 38 C.C.P.A., Customs, 57, C.A.D. 440. No objection having been made to the entry or the papers showing the official actions taken by the collector, said documents will be received in evidence and given their natural probative effect. United States v. Toledo Museum of Art, 25 C.C.P.A., Customs, 373, T.D. 49455.

The first point before us concerns the jurisdiction of the court to review the action of the collector and other officials refusing to remit or refund the duties assessed on the cost of repairs under section 466, infra.

Said section provides:

Sec. 466. Equipment and Repairs of Vessels.

Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

"Sec. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; and if the owner or master of such vessel shall willfully and knowingly neglect or fail to report, make entry, and pay duties as herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited. * * *

"Sec. 3115. If the owner or master of such vessel furnishes good and sufficient evidence—

"(1) That such vessel, while in the regular course of her voyage, was compelled, by stress of weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination; * *

* * * * * *

then the Secretary of the Treasury is authorized to remit or refund such duties, and such vessel shall not be liable to forfeiture, * * *."

Under this section, it has been held that the Secretary of the Treasury has final and exclusive authority to determine from the evidence submitted whether or not the duties provided for in section 3114 should be remitted or refunded and that the courts have no jurisdiction to review his decision. Waterman Steamship Corp. v. United States, 30 C.C.P.A., Customs, 119, C.A.D. 223. Nor may the court consider the evidence upon which the Secretary refused to act and determine whether it was, in fact, sufficient to warrant a remission by him. Lykes Bros. (Ripley Steamship Co.) v. United States, 6 Cust.Ct. 467, C.D. 518; Port-

land California Steamship Co. v. United States, 13 Cust.Ct. 170, C.D. 889.

Plaintiffs concede that this was the law prior to the Reorganization Act of 1949 (63 Stat. 203, 5 U.S.C.A. § 133z et seq.) and Reorganization Plan No. 26 (64 Stat. 1280), but claim that, by act of Congress and by act of the Executive, the power to remit has been finally and exclusively vested in collectors and that decisions of collectors are subject to review by this court under sections 514 and 515 of the tariff act, 19 U.S.C.A. §§ 1514, 1515.

In considering plaintiffs' theory, it is pertinent to note the circumstances of this case and the various statutes and regulations in effect at the time of entry.

The entry was made on October 11, 1951, and covered numerous repairs, including those involved herein. By letter, dated December 2, 1952, the owner of the vessel was advised by the assistant collector that it had been determined that some of the repairs had not been caused by stress of weather or other casualty and were dutiable. Thereafter, the file was transmitted to the Bureau of Customs for review and the Chief of the Division of Classification, Entry, and Value stated in a letter, dated March 10, 1953, that the Bureau was not satisfied that the repairs in question were necessitated by stress of weather or other casualty and was in accord with the collector's proposed denial of relief from payment of the duties assessed thereon. Subsequently, and on May 27, 1953, an application for remission was filed on behalf of the plaintiffs and transmitted to the Bureau of Customs by the collector. Under date of June 26, 1953, the Chief of the Division of Classification, Entry, and Value stated again that the Bureau was not satisfied that the repairs were necessitated by stress of weather or other casualty and affirmed the action of the collector in denying the relief requested.

Thereafter, the entry was liquidated and this protest was filed.

At the time of this entry, there were in effect, in addition to section 466, supra, chapter 348 of the laws of 1927 (44 Stat. 1382, 5 U.S.C.A. § 281 et seq.), the Reorganization Act of 1949 (63 Stat. 203, 5 U.S.C.A. § 133z et seq.), Reorganization Plan No. 26 of 1950 (64 Stat. 1280), and regulations issued thereunder. Chapter 348 of the laws of 1927 established the Bureau of Customs with a Commissioner of Customs and other officers and provided, in section 3(a) (5 U.S.C.A. § 281b), that the Secretary of the Treasury might confer upon the Commissioner or any of the officers of the Bureau any of his rights, privileges, powers or duties in respect of the importation entry, or exportation of merchandise.[1] Under this section, such authority was conferred upon the Commissioner by various orders, issued by the Secretary of the Treasury. T.D. 42044, T.D. 42102, T.D. 49047, T.D. 50192. On December 11, 1946, the Secretary issued an order providing that collectors might remit or refund duties assessed on the equipment or repair of vessels. T.D. 51584. This order was superseded by an order, dated January 5, 1949, which again delegated to the Commissioner of Customs the Secretary's authority in connection with the importation, entry, or exportation of merchandise. T.D. 52121. On October 19, 1949, pursuant to the provisions of T.D. 52121, the Commissioner, with the approval of the Acting Secretary, designated the officers of the Bureau of Customs who should make certain decisions within the purview of the order of the Secretary. T.D. 52331. Subsequently, and on January 26, 1950, the Commissioner issued an order providing that the Chief of the Division of Classification, Entry, and Value should make decisions relating to the assessment and collection of duties on equipment or repairs of vessels under section 466 of the

[1]. Section 3(a) (5 U.S.C.A. § 281b) has since been repealed, in view of Reorganization Plan No. 26. Public Law 779, chapter 1263, laws of 1954, 68 Stat. 1226, 1229, approved September 3, 1954.

Tariff Act of 1930 and decisions remitting or refunding such duties. T.D. 52394.

Thereafter, on July 31, 1950, Reorganization Plan No. 26 of 1950, promulgated under the Reorganization Act of 1949, went into effect. By this plan, all functions of all officers of the Department of the Treasury and of all agencies and employees of said Department were transferred to the Secretary of the Treasury and the Secretary was given powers of delegation as follows:

"The Secretary of the Treasury may from time to time make such provisions as he shall deem appropriate authorizing the performance by any other officer, or by any agency or employee, of the Department of the Treasury of any function of the Secretary, * * *."

By order, dated July 31, 1950, the Secretary directed that the officers, employees, and agencies of the Treasury Department should continue to perform the functions they were authorized to perform immediately prior to the effective date of the reorganization plan, until changed by appropriate action. (15 F.R. 6521, September 27, 1950.)

Under these statutes and regulations, we have held that there was no clear and explicit delegation of authority to collectors of customs to remit or refund duties under section 466, supra, and that a decision by the collector denying an application for such remission was unauthorized and void. International Navigation Company, Inc. v. United States, 35 Cust.Ct. 52, C.D. 1721.

Plaintiffs have cited later orders, issued by the Secretary of the Treasury and the Commissioner of Customs, delegating authority and amending the regulations, but these need not concern us, since they were not in effect at the time of entry herein.

In the instant case, the collector's proposed denial of remission of duties under section 466, supra, was referred to the Bureau of Customs, and the Bureau, after examination of the evidence in the record, was in accord with that action. Furthermore, a petition submitted by the owner of the vessel was transmitted to the Bureau thereafter. In a letter, signed by the Chief of the Division of Classification, Entry, and Value, it is stated that the Bureau was not satisfied that the repairs were necessitated by stress of weather or other casualty, and the collector's action denying relief from duties was affirmed.

■ Thus, the final decision denying relief was made by the Bureau of Customs through the officer to whom the authority had been delegated, the Chief of the Division of Classification, Entry, and Value. Since the said Division Chief is an officer of the Bureau of Customs, upon whom the Secretary was authorized to confer his powers under 5 U.S.C.A. § 281b, and, since at the time of entry herein such delegation had been made under that section (T.D. 52331, as amended by T.D. 52394) and continued under the reorganization plan (15 F.R. 6521), his decision is not invalid on the ground that it was made by an unauthorized person. Even though the decision is in form an affirmance of the collector's action, it is a decision of the Bureau of Customs by the Chief of the Division of Classification, Entry, and Value, based upon the record transmitted by the collector. Therefore, it is unnecessary to direct here, as we did in International Navigation Co. Inc., v. United States, supra, that the collector submit the application for remission of duties to the Secretary of the Treasury or his duly empowered representative, so that a decision may be made by him. A decision has already been made by an authorized representative of the Secretary of the Treasury and is controlling herein.

Since the controlling decision is the one made by the Chief of the Division of Classification, Entry, and Value, plaintiffs' argument that the Secretary's functions have been vested finally and exclusively in collectors and that collectors'

decisions are reviewable by the court is not tenable.

Plaintiffs rely upon section 4.14(j) of the Customs Regulations of 1954, as amended, which provides:

"(j) The authority under section 3115 of the Revised Statutes, as amended, to remit or refund duties is delegated to the several collectors of customs and their successors in office. When the evidence referred to in paragraph (f), (g), or (h) of this section has been received and examined by the collector of customs he shall notify the owner or operator of the vessel, or other party in interest, of his decision, but if any doubt exists the case shall first be referred to the Bureau for advice.
*   *   *   "

However, at the time of entry herein, the applicable regulations (section 4.14 (j), Customs Regulations of 1943) did not contain a provision such as the first sentence quoted above. It has been held, that the regulation then in force was not an explicit delegation of authority to the collector. International Navigation Co., Inc., v. United States, supra.

Furthermore, the regulations did not vest the power to remit finally and exclusively in collectors, as plaintiffs claim. Subdivision (k) of section 4.14 provided for a review by the Bureau of Customs and for liquidation based upon the Bureau's decision. Thus, final authority to remit was vested, not in collectors, but in the Commissioner of Customs, acting through the appropriate officers of the Bureau of Customs.

■ While sections 514 and 515 of the Tariff Act of 1930 provide that all decisions of the collector as to the rate and amount of duties chargeable are subject to protest and review by this court, a collector's decision refusing to remit duties assessed under section 466, supra, where made under proper authorization, is not included. The decisions referred to in sections 514 and 515 are those made by the collector in pursuance of a duty imposed upon him personally by the statute, for instance, those made by him under section 505, 19 U.S.C.A. § 1505, which provides that he shall ascertain, fix, and liquidate the rate and amount of duties to be paid on imported merchandise. On the other hand, when the collector passes upon matters within the province of the Secretary of the Treasury, he does so, not in pursuance of any independent authority, but solely because he has been delegated to act as agent of the Secretary for that purpose. 21 Op.Atty.Gen. 92, 95. The fact that the Secretary's authority has been conferred upon the collector, or any other officer, does not give this court a jurisdiction which it otherwise does not have. Since a decision by the principal (the Secretary is not reviewable by the courts, neither is a decision by the agent, where the power has been validly delegated to him.

Furthermore, the decision in question is not one with respect to the rate and duties chargeable. Under the statute, duty is required to be assessed upon all items constituting expenses of repairs, and such duty may be remitted or refunded only under the circumstances set out in the law itself. The issue, therefore, is not the amount of duty to be assessed, but whether it may be remitted or canceled.

For the foregoing reasons, the motion of the Government to dismiss the protest as to the claim that the duties should have been remitted because the repairs were incurred by reason of stress of weather or other casualty is granted.

■ The alternative claim before us relates to certain items, which are alleged not to constitute equipment, repairs, or expenses of repairs dutiable under section 466, supra. This question is subject to protest and review on the merits by this court under the provisions of section 514 of the Tariff Act of 1930. Portland California Steamship Co. v. United States, supra.

■ The items as to which claims have been made have been marked "A" through "G" on explanatory sheets attached to the bill submitted by Gilbert Hamer & Co., Ltd., at Durban (plaintiffs'

collective exhibit 2–A). They will be considered seriatim.

The item marked "A" is described as follows:

"All defective machinery parts transported to our works, sizes taken 6 new heavy wood crates fabricated, machinery packed, listed, crates prepared for shipment to U.S.A. 232.1.1"

According to plaintiffs' witness, Robert Cavall, Jr., the marine engineer and consultant who was familiar with the vessel and the repairs made, this item covers the cost of crating, packing, and shipping back to the United States, the remnants of auxiliary generators which had been broken and were removed from the ship.

It is evident that this item does not cover a repair to the vessel or its equipment. It is not properly dutiable under section 466, supra.

The items marked "B" and "F" on plaintiffs' collective exhibit 2–A are described as follows:

"To providing and maintaining 380 volts, 3 phase shore supply to ship's board and disconnecting when finished with. 27.10.—

\*    \*    \*    \*    \*    \*

"To providing and connecting to ship's switchboard, 380 volt, 3 phase phase, 50 cycle, supply on 4.6.51, maintaining same and disconnecting on 18.6.51. 33.15.4"

The witness stated that these had to do with the supplying of electrical light and power to the ship, because both auxiliary generators had been destroyed. He explained that, for the maintenance of the ship's refrigeration and items of that nature and to provide lighting for the making of repairs, it was necessary to obtain an outside source of power.

These items do not cover actual repairs nor the cost of labor in connection therewith. They partly involve furnishing light needed to do the work. It has been held that expenses for drydocking a vessel while undergoing repairs in a foreign port are not subject to duty as expenses of repairs. United States v. George Hall Coal Co., C.C., 134 F. 1003, T.D. 26038; Geo. Hall Coal Company v. United States, 11 Treas.Dec. 318, T.D. 27154; States Steamship Co. v. United States, 73 Treas.Dec. 718, T.D. 49531. Since the cost of a place to do the work is not dutiable as expenses of repairs, neither is the cost for lighting necessary for its performance.

Item "E" is described as follows:

"To installing and maintaining 12 strip heaters in auxiliary generators and steering gear motors, and dismantling and removing when finished with. (From 7.6.51 to 18.-6.51) 24.15.6"

The witness explained that this item was for the maintenance of local heating in the various motors while the vessel suffered the breakdown. He said that when a vessel is inactive, it is proper "to keep them condensation-free."

It is clear that this item does not involve repairs.

The items marked "C" and "D" are described on plaintiffs' collective exhibit 2-A as follows:

"Port and starboard main boilers prepared for survey, casing doors removed, Header doors loosened, removed, door joint and leader joint faces cleaned, steam drum opened, 5 drain valves opened, reconditioned, drain pipe stoppages cleaned, drains replaced. New gaskets supplied by vessel fitted, all doors replaced following survey, tightened, steam raised, header doors retightened, casings replaced. 345.13.8"

"Fitters emplyed [sic] throughout examining, correcting and adjusting various parts of Bailey combustion control, i. e. standard and pilot controls with gauges opened, air lines checked, air reservoir drained, reducing valves reconditioned, new diaphragms supplied and fitted, air filters cleaned. New gauge face fabricated and fitted to master control. 169.7.7"

According to the witness, these items covered expenses incurred for labor relative to the condition of the boilers. Item "C" was for the examination of the port and starboard boilers as a result of the salting of the boilers, and item "D" was for examining completely the combustion control board for the boilers.

Item "G" is described on plaintiffs' collective exhibit 2–A as follows:

"Main Turbine Unit:

"Sizes taken, 4 M.S. graduated guide pillars machined at works, one end screwed, nuts fitted, delivered, insulation around steam side of turbine top casing removed, all flange bolts, nuts and dowel pins disconnected, guide pillars fitted, labyrinth packing upper housings loosened. Inspection doors removed, inner flange bolts uncoupled, engine room lifting gear collected, fitted, main steam pipe supported, disconnected, top turbine casing raised, all parts examined, surveyed, rotor turned, blading clearances checked, flange faces polished, securing studs sounded, foreign matter around starter and rotor removed by air pressure, securing bolts threads and nuts reconditioned at works, jointing medium supplied, flange faces coated, top casing replaced, secured, inspection doors replaced. Labyrinth packing upper housing rejointed, gland steam and lubricating oil pressure gauges renewed, lubricating oil tank opened, cleaned, piping to governor, etc. removed, checked, cleaned, replaced, tested, defective fittings renewed as necessary. Gland seal regulator housing removed, examined at works, defective screwed portions built up electrically, rethreaded, all parts reconditioned, housing returned, refitted.

"Asbestos lagging supplied, steam portions of main turbine unit insulated. Removed all contacts from propulsion motor, reversing breaker, dressing and silver plating, refitting, adjusting and checking alignment. 297.12.4"

The witness stated that this item covered the opening and closing of the main turbine for examination and that nothing was done beyond the replacing of various removals. He explained:

"The item that refers to insulation, to open the turbine there is about six inches of asbestos that conceals the joint. That has to be removed before you can get to the nuts which separate the casing. That's the only way you can dismantle that.

"X Q. It says "asbestos lagging supplied."—A. You destroy that when you take the turbine apart, and additional material is required to put it back to the original.

"X Q. So they did supply some asbestos lagging?—A. That is correct."

The witness testified that none of the items "A" through "G" involved any changes or improvements in the vessel's equipment; that they were testing and inspecting items.

In Waterman Steamship Corporation v. United States, 26 Cust.Ct. 114, C.D. 1310, it was held that the expenses of annealing ships' loading gear were not dutiable as repairs under section 466, since the process was one of heating metal and cooling it off for the purpose of discovering defects. The court noted that, if the expenses of annealing had been incurred in order to restore the loading gear to its original state after partial destruction or injury, there might have been some doubt as to plaintiffs' claim that they were not dutiable. The court went on to state, 26 Cust.Ct. at page 122:

"Judge Cole, presiding at the trial of this case, succinctly, but quite clearly compared the inspection laws of Great Britain, pertaining to loading gear of vessels, to that of the automobile inspection laws enacted in some of these United States. If such inspection revealed defects, repairs would be required before a new certificate is issued. Neither the inspection of an automobile nor

the annealing process, applied to the loading gear, may be described as a restoration after decay, waste, injury, or partial destruction. Neither the automobile nor the loading gear was mended, made over, or restored to a sound state. All that is done to the automobile is to apply tests to ascertain the present condition of the various parts so tested. The only reason why the loading gear of ships is annealed is to clean off the accumulation of oil, etc., adhering to the steel so as to more readily ascertain the present condition of the parts or articles subjected to such process. Neither would come within the definition of a repair."

In the instant case, the work covered by items "C," "D," and "G" was for the examination of the boilers and the turbine to determine their condition and to ascertain whether repairs were necessary. Such inspection does not come within the definition of a repair. Counsel for the Government claims that the term "expenses of repairs," used in the statute, has a broader meaning than the word "repairs," but we think the term was used in contradistinction to the words "repair parts or materials" in order to include expenses for labor. Since the work involved herein did not result in the restoration of the boilers or the turbine to operable condition after deterioration or destruction, it is not properly dutiable under section 466, supra.

The protest herein is sustained as to the claim that the items marked "A," "B," "C," "D," "E," "F," and "G" on plaintiffs' collective exhibit 2–A are not subject to duty under section 466, supra, as expenses of repairs. It is dismissed as to all other claims. Judgment will be rendered accordingly.

DONLON, Judge.

I concur in the result but not in all aspects of the opinion as it relates to the issue of jurisdiction.