IMBERT IMPORTS, INC., et al.
v.
UNITED STATES.

R.D. 11718; Reappraisement R63/5025 and 13 others.

United States Customs Court.
July 23, 1970.

Barnes, Richardson & Colburn, New York City (Norman C. Schwartz and David O. Elliott, New York City, of counsel), for plaintiffs.

William D. Ruckelshaus, Asst. Atty. Gen. (Glenn E. Harris and Bernard J. Babb, New York City, trial attys.), for defendant.

WATSON, Judge:

These appeals for reappraisement are before this court for decision after an interesting career during the course of which they were dismissed by the trial judge for failure to prosecute and then restored to the calendar by the Second Division in Appellate Term. Imbert Imports, Inc. v. United States, 58 Cust.Ct. 848, A.R.D. 224 (1967).

These appeals place in issue the assessment of a special dumping duty pursuant to section 201(a) of the Antidumping Act of 1921, as amended (19 U. S.C. § 160(a) (1958)), and the correctness of the finding of the Tariff Commission·that an industry in the United States was likely to be injured by reason of the importation of such merchandise. Section 201 of the Antidumping Act of 1921, provides as follows:

(a) Whenever the Secretary of the Treasury (hereinafter called the "Secretary") determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States or elsewhere at less than its fair value, he shall so advise the United States Tariff Commission, and the said Commission shall determine within three months thereafter whether an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation of such merchandise into the United States. The said Commission, after such investigation as it deems necessary, shall notify the Secretary of its determination, and, if that determination is in the affirmative, the Secretary shall make public a notice (hereinafter in sections 160–173 of this title called a "finding") of his determination and the determination of the said Commission. For the purposes of this subsection, the said Commission shall be deemed to have made an affirmative determination if the Commissioners of said Commission voting are evenly divided as to whether its determination should be in the affirmative or in the negative. The Secretary's finding shall include a description of the class or kind of merchandise to which it applies in such detail as he shall deem necessary for the guidance of customs officers.

(b) Whenever, in the case of any imported merchandise of a class or kind as to which the Secretary has not so made public a finding, the Secretary had reason to believe or suspect, from the invoice or other papers or from information presented to him or to any person to whom authority under this section has been delegated, that the purchase price is less, or that the exporter's sales price is less or likely to be less, than the foreign market value (or, in the absence of such value, than the constructed value), he shall forthwith publish notice of that fact in the Federal Register and shall

authorize, under such regulations as he may prescribe, the withholding of appraisement reports as to such merchandise entered, or withdrawn from warehouse, for consumption, not more than one hundred and twenty days before the question of dumping has been raised by or presented to him or any person to whom authority under this section has been delegated, until the further order of the Secretary, or until the Secretary has made public a finding as provided for in subdivision (a) in regard to such merchandise.

(c) The Secretary, upon determining whether foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and upon making its determination under subsection (a) of this section, shall each publish such determination in the Federal Register, with a statement of the reasons therefor, whether such determination is in the affirmative or in the negative.

The record herein is entirely documentary, consisting of the papers filed in the Tariff Commission proceeding and the Tariff Commission's determination of likelihood of injury. TC Publication 87, April 19, 1963.

The importations in question consist of Portland gray cement exported from the Dominican Republic during the period of October 25, 1962 to March 25, 1963 and entered at the port of San Juan, Puerto Rico. Prior to these exportations the Secretary of the Treasury had ordered that appraisements of entries of Portland gray cement from the Dominican Republic were to be withheld. On January 16, 1963, the Secretary of the Treasury made a determination that such cement was being, or was likely to be, sold in the United States at less than fair value within the meaning of section 201(a) of the Antidumping Act of 1921. The Tariff Commission then instituted an investigation and determined on April 19, 1963 that an industry in the United States was likely to be injured by reason of such importation at less than fair value. These importations

were, accordingly, assessed with dumping duty.

Plaintiffs object to the Tariff Commission's finding that the likelihood of injury existed and claim that said finding is arbitrary and not based on substantial evidence. Plaintiffs also claim that the punishment, so to speak, does not fit the "crime" since the likelihood of injury, if there was any, was to industry in the New York area, while the assessment of dumping duties affects importations into Puerto Rico, whose industry was not found likely to be injured.

■ Central to the disposition of this case is the scope of this court's review of the validity of the actions of the Secretary of the Treasury and the Tariff Commission. Plaintiffs contend that the scope of this review should be that provided for in the Administrative Procedure Act, 5 U.S.C. § 1001, as specifically set forth in section 1009(e).

Scope of review.

So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 1006 and 1007 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are sub-

ject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error.

I am of the opinion that although plaintiffs are entitled to a measure of review of the acts of the Tariff Commission, it is not as broad as that outlined in the Administrative Procedure Act for the reason that said act does not apply to the proceedings in question. T. M. Duche & Sons v. United States, 39 CCPA 186, C.A.D. 485 (1952). In its role in antidumping proceedings the Tariff Commission is not an agency within the intent of the Administrative Procedure Act, nor do its methods of deliberation conform to the "rule making" activity to which said act is directed. The Tariff Commission herein is acting in an advisory capacity only. For a full discussion of its function herein, see, Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933). See also, Kleberg & Co. (Inc.) v. United States, 71 F.2d 332, 21 CCPA 110, T.D. 46446 (1933).

■ The scope of review which this court exercises over such proceedings is primarily focused on two areas, that of procedure and theory of law, and raises two questions. Has the Tariff Commission acted within the scope of its delegated authority and has it correctly construed the pertinent statutory language? We will not go further and weigh the evidence.

■ The procedure followed by the Tariff Commission in the instant case has not been challenged. The theory of law underlying its decision, namely, that a likelihood of injury is as sufficient as an actual injury and that such factors as sales at less than fair value and capacity and incentive for making future sales, may properly be considered, is correct. Ellis K. Orlowitz Company v. United States, 50 CCPA 36, C.A.D. 816 (1963).

See also the exhaustive opinion in City Lumber Co. et al. v. United States, 64 Cust.Ct., A.R.D. 269 (1970), appeal pending.

I, therefore, find that the Tariff Commission complied fully with the procedural requirements of such proceedings and did not proceed under an erroneous theory of law or misinterpret the statutory terminology.

■ Plaintiffs' final contention, that it was improper to assess dumping duties on merchandise entering Puerto Rico, is without merit. The term "United States" as used in the Antidumping Act encompasses Puerto Rico (19 U.S.C. § 172). Consequently, whatever actions were taken with regard to said importation were clearly in conformity with section 202(a) of said act which provides for the imposition of a special dumping duty on "all imported merchandise * * * of a class or kind as to which the Secretary of the Treasury has made public a finding as provided for in section 201 * * *."

In light of the above, I make the following finding of facts:

1. These appeals for reappraisement cover 14 entries of Portland gray cement exported from the Dominican Republic between the dates of October 25, 1962 and March 25, 1963 and entered at the port of San Juan, Puerto Rico.

2. On January 16, 1963, the Secretary of the Treasury, acting pursuant to the provisions of the Antidumping Act of 1921, as amended, determined that said Portland gray cement was being or was likely to be sold in the United States at less than fair value, and so advised the United States Tariff Commission.

3. On April 19, 1963, the Tariff Commission, after due investigation, notified the Secretary of the Treasury of its determination that an industry in the United States, specifically the New York area, was likely to be injured by reason of the importation of said merchandise into the United States at less than fair value.

4. In addition to the uncontested regular duty, said importations were assessed with duty pursuant to the special dumping duty provisions of said Antidumping Act (19 U.S.C. §§ 161, 162, 163).

5. The findings of the Tariff Commission were made pursuant to the procedural requirements of said Antidumping Act and were based on its consideration of the relevant facts before it.

I conclude as matters of law:

1. The Tariff Commission committed no procedural irregularities in arriving at its determination.

2. The determination of a likelihood of injury to an industry of the United States based on such factors as sales below fair value and incentive and capability for continuing such behavior, is not in violation of the statutory language.

3. The importations were properly assessed with duty pursuant to the valuation provisions of the Antidumping Act of 1921, as amended.

4. Plaintiffs have failed to prove that the assessed values determined by the appraising official were incorrect.

5. The values found by the appraising official for this merchandise are affirmed.

Judgment will issue accordingly.