(C.R.D. 73–3)

SUWANNEE STEAMSHIP COMPANY *v.* UNITED STATES

Court No. 70/2603

(Dated February 8, 1973)

*Toole, Taylor, Moseley, Gabel & Milton* (*James F. Moseley* of counsel) for the plaintiff.

*Harlington Wood, Jr.,* Assistant Attorney General (*Martin L. Rothstein,* trial attorney), for the defendant.

RE, Judge: Defendant has moved under rule 4.7(b)(2) to dismiss this action for lack of jurisdiction over the subject matter.

Rule 4.7(b)(2) of the rules of this court provides:

"(b) **Defenses: How Presented:** The following defenses may be made by a motion to dismiss: * * * (2) lack of jurisdiction of the subject matter; * * *. A motion making any of these defenses may be made before answer."

It is noted at the outset that, when read together with rules 4.4 through 4.7, it might appear that the jurisdictional defense pleaded may be raised only on a motion to dismiss the complaint, and not on a motion to dismiss the action. The court does not adopt such a construction since it could needlessly prolong the final disposition of an action defective on jurisdictional grounds.

Plaintiff, operator of the vessel SS "Volusia" during 1968, seeks remission of duties assessed at 50 per centum ad valorem under section 466 of the Tariff Act of 1930, 19 U.S.C. § 257 (section 3114 of the Revised Statutes), on the cost of foreign repairs made on the vessel

during April and June 1968 in Port of Spain, Trinidad, and Capetown, South Africa. Upon liquidation of the vessel repair entry in August 1969, plaintiff filed with the regional commissioner of customs in Miami, Florida, a petition for relief from assessment of duties. The petition was denied, and plaintiff thereafter paid the vessel repair duties. Under section 466 of the Tariff Act of 1930, 19 U.S.C. § 258 (section 3115 of the Revised Statutes), it has brought action in this court to recover the duties paid.

Sections 257 and 258 of Title 19 of the United States Code, in effect prior to January 5, 1971,[1] provided in pertinent part as follows:

"§ 257. Duty on equipments or repair parts for vessels.

The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; * * *.

§ 258. Remission for necessary repairs.

If the owner or master of such vessel furnishes good and sufficient evidence—

(1) That such vessel, while in the regular course of her voyage, was compelled, by stress or weather or other casualty, to put into such foreign port and purchase such equipments, or make such repairs, to secure the safety and seaworthiness of the vessel to enable her to reach her port of destination; * * *

then the Secretary of the Treasury is authorized to remit or refund such duties, and such vessel shall not be liable to forfeiture, and no license or enrollment and license, or renewal of either, shall hereafter be issued to any such vessel until the collector to whom application is made for the same shall be satisfied, from the oath of the owner or master, that all such equipments or parts thereof or materials and repairs made within the year immediately preceding such application have been duly accounted for under the provisions of this section and section 257 of this title, and the duties accruing thereon duly paid * * *."

The complaint alleges that plaintiff's petition for remission of duties—

"* * * was denied based upon the theory that the repairs upon which the duty was assessed, were necessitated by events and acts that occurred prior to the voyage during which the repairs were

---

[1] P. Law 91–654, 84 Stat. 1944, amended section 466, which is now codified to 19 U.S.C. § 1466, and repealed R.S. §§ 3114 and 3115 (19 U.S.C. §§ 257 and 258), effective January 5, 1971.

made and that remission pursuant to 19 U.S.C. Section 258(1) would not, therefore, be proper";

and that—

"* * * the Custom [sic] Bureau's interpretation of U.S.C. 19, section 258(1) is narrow and contrary to the intent of the law."

The basis of this action, plaintiff asserts, arose when the SS "Volusia", while en route from Morocco to Norfolk, Virginia in January and March 1968, encountered heavy weather and, needing additional ballast, used salt water in the fresh water tanks for ballast. The chief engineer's failure to follow instructions, and to flush the salt water from the tanks upon reaching Norfolk, resulted in contaminating the fresh water taken on board at that port. After sailing from Norfolk the contaminated water salted both of the boilers, thus requiring the foreign repairs.

The complaint alleges that the Bureau of Customs

"* * * held that the cause of the damage was the addition of salt water into the fresh water tanks and the failure to flush the tanks before departing from Norfolk, Virginia on the voyage in which the repairs were made. The Customs Bureau thus determined that the cause of the damage took place before the beginning of the voyage and, therefore, the cause or casualty which led to the repairs occurred before the beginning of the voyage in question."

Plaintiff contends that the boilers were damaged from the effects of the sea water working on them during the voyage from Norfolk; and that the failure to flush the fresh water tanks, which was the underlying cause, was "latent in nature" and not discoverable until the damage had been done.

Defendant has moved to dismiss the action on the ground that the authority conferred upon the Secretary of the Treasury or his delegate under section 466 to remit vessel repair duties collected pursuant thereto is "entirely discretionary, and that the exercise of that discretion is final and not subject to review in any court."

The basic question presented is whether the exercise of the discretionary authority conferred upon the Secretary is judicially reviewable.

The principle has been clearly established that preclusion of judicial review of administrative action adversely affecting private rights is not lightly to be inferred. Furthermore, judicial review of final agency action is not precluded unless there is persuasive reason to believe that nonreviewability was intended by Congress. *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U.S. 402, 91 S. Ct. 814 (1971); *Data Processing Service* v. *Camp*, 397 U.S. 150, 90 S. Ct. 827 (1970); *Abbott*

*Laboratories* v. *Gardner*, 387 U.S. 136, 87 S. Ct. 1507 (1967). As stated in *Barlow* v. *Collins*, 397 U.S. 159, 166, 90 S. Ct. 832, 838 (1970), "Indeed, judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated."[2]

Judicial review of administrative action is therefore to be presumed, and in the words of one thoughtful scholar:

> "* * * in cases of statutory ambiguity or silence, and in new situations in which there are factors pro and con, the issue of reviewability may become acute. In such situations the presumption of reviewability plays a decisive role." Jaffe, *Judicial Control of Administrative Action*, 336 (1965).

A basic distinction must therefore be made between the availability of judicial review, and the scope of that review. Furthermore, the existing limitations upon the scope of judicial review of the exercises of administrative discretion have been largely self-imposed. The courts have abstained from inquiring into certain administrative acts by virtue of the application of the judicially conceived rule, as expressed by Mr. Justice Douglas in *United States* v. *George S. Bush & Co.*, 310 U.S. 371, 380, 60 S. Ct. 944, 946 (1940), quoting Mr. Justice Story in *Martin* v. *Mott*, 25 U.S. (12 Wheat.) 19, 30 (1827), that "Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction, that the statute constitutes him the sole and exclusive judge of the existence of those facts."

Although this description of discretionary authority was painted by Mr. Justice Story with a broad brush, the scope of "administrative absolutism" (Mr. Justice Douglas in *Data Processing Service* v. *Camp*, *supra*, 397 U.S. at 157) has, in practice, been more narrowly defined. Thus, in *George S. Bush*, *supra*, although the court upheld the President's freedom to act under the flexible tariff provisions of the Tariff Act of 1930, it noted that he had acted "in full conformity with the statute." Indeed, as Mr. Justice Marshall observed in *Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U.S. 402, 410, 91 S. Ct. 814, 820, 821 (1971), the exception from judicial review of acts committed

---

[2] Where Congress intended to preclude judicial review it has found no difficulty in clearly expressing its intent. An example is found in the action of the Foreign Claims Settlement Commission where the enabling legislation expressly stated that:

> "The action of the Commission in allowing or denying any claim under this subchapter shall be final and conclusive on all questions of law and fact and not subject to review by the Secretary of State or any other official, department, agency, or establishment of the United States, or by any court by mandamus or otherwise." International Claims Settlement Act of 1949, 64 Stat. 12 (1950), as amended, 22 U.S.C. § 1623(h) (1970).

Almost identical language is found in the War Claims Act of 1948, 62 Stat. 1240 (1948), as amended, 50 U.S.C. § 2010 (1970). See Re, "The Foreign Claims Settlement Commission: Its Function and Jurisdiction", 60 Mich. Law Rev. 1079, 1092–1093 (1962).

to agency discretion is "very narrow" and is applicable "in those rare instances" where there "is no law to apply."

Many customs cases may be cited for the proposition that where discretionary power is granted, the court, although precluded from evaluating the facts, may nevertheless review the administrator's action for the purpose of determining whether he has exceeded his statutory authority, has proceeded upon an erroneous theory of law, or has failed to comply with the pertinent statute. *Carl Zeiss, Inc.* v. *United States*, 23 CCPA 7, T.D. 47654 (1935) ; *Kleberg & Co. (Inc.)* v. *United States*, 21 CCPA 110, T.D. 46446 (1933) ; *United States* v. *Central Vermont Railway Co.*, 17 CCPA 166, T.D. 43474 (1929) ; *United States* v. *Tower & Sons*, 14 Ct. Cust. Appls. 421, T.D. 42058 (1927) ; *Corpus Company et al.* v. *United States*, 69 Cust. Ct. 170, C.D. 4390 (1972), *appeal pending; H. Z. Bernstein Co., Inc.* v. *United States*, 41 Cust. Ct. 282, C.D. 2053 (1958) ; *Elof Hansson, Inc.* v. *United States*, 41 Cust. Ct. 519, R.D. 9212 (1958), *rev'd on other grounds*, 43 Cust. Ct. 627, A.R.D. 114 (1959), *rev'd*, 48 CCPA 91, C.A.D. 771 (1960) ; *International Navigation Company, Inc.* v. *United States*, 35 Cust. Ct. 52, C.D. 1721 (1955) ; *Pacific Transport Lines, Inc.* v. *United States*, 29 Cust. Ct. 21, C.D. 1439 (1952) ; *Armour and Company* v. *United States*, 29 Cust. Ct. 296, C.D. 1482 (1952). See also *Ellis K. Orlowitz Company* v. *United States*, 50 CCPA 36, C.A.D. 816 (1963) ; *Imbert Imports, Inc., et al.* v. *United States*, 65 Cust. Ct. 697, R.D. 11718, 314 F. Supp. 784 (1970), *aff'd*, 67 Cust. Ct. 569, A.R.D. 294, 331 F. Supp. 1400 (1971), *appeal pending;* and *City Lumber Co. et al.* v. *United States*, 64 Cust. Ct. 826, A.R.D. 269, 311 F. Supp. 340 (1970), *aff'd*, 59 CCPA 89, C.A.D. 1045 (1972), for analogous holdings with respect to Tariff Commission findings.

It is against this background that the court has examined the pertinent judicial precedents.

In *Waterman Steamship Corp.* v. *United States*, 30 CCPA 119, 126, C.A.D. 223 (1942), the Court of Customs and Patent Appeals reviewed the legislative history of section 3115 of the Revised Statutes (19 U.S.C. § 258) and decided that—

> "* * * it was the purpose of the Congress, by the enactment of section 3115, to confer upon the Secretary of the Treasury exclusive and final authority to determine, from the evidence submitted, whether or not the duties provided for in section 3114 should be remitted or refunded."

In its concluding paragraph the court, however, stated that the trial court was right "in holding that it was *without jurisdiction* to consider and determine the issues." *Id.* at 127. (Italics added.)

It would seem clear that the words "without jurisdiction" were used

to suggest that the trial court was correct in not having reviewed the exercise of the discretionary power conferred upon the Secretary. It cannot be implied that the court lacked jurisdiction to determine whether his action was *ultra vires*, based upon an erroneous construction of the law, or not in compliance with the statute. See cases cited *supra*. Thus, even in *Waterman*, the court was not loath to assert that where the official action of customs officials "depends upon the validity of the action of the Secretary" [of the Treasury], the validity of such action would be judicially reviewable. *Id.* at 125.

Cases in accord with *Waterman* in precluding review of the Secretary's refusal to remit duties under section 466 are *International Navigation Co., Inc.* v. *United States*, 38 Cust. Ct. 5, C.D. 1836, 148 F. Supp. 448 (1957) ; *American Viking Corp. et al.* v. *United States*, 37 Cust. Ct. 237, C.D. 1830, 150 F. Supp. 746 (1956). It has also been held that the court may not consider the evidence upon which the Secretary refused to act and determine whether it was in fact "good and sufficient" to warrant remission of duties by him. *Portland California Steamship Co.* v. *United States*, 13 Cust. Ct. 170, C.D. 889 (1944) ; *Lykes Bros. (Ripley Steamship Co.)* v. *United States*, 6 Cust. Ct. 467, C.D. 518 (1941).

Before specifically considering the merits of defendant's motion, it should be noted that this motion to dismiss is analogous to a motion for judgment on the pleadings since it is based upon the factual allegations pleaded in the complaint,[3] but asserts their failure to establish jurisdiction as a matter of law. Thus, the motion in effect admits all material facts pleaded by plaintiff, and defendant's supporting memorandum does not dispute plaintiff's factual allegations. See *C. J. Tower & Sons of Buffalo, Inc., a/c Metco, Inc.* v. *United States*, 68 Cust. Ct. 377, C.R.D. 72–11 (1972).

The complaint, upon which the instant motion is based, alleges, in substance, errors of law and in findings of fact. Plaintiff claims that the Secretary of the Treasury's representative (loosely characterized as the "Customs Bureau") erred in (1) construing section 466, 19 U.S.C. § 258(1), as precluding remission unless the repairs upon which the duty was assessed were caused by acts and events, i.e., stress of weather or other casualty, which took place during the same voyage,

---

[3] This action was commenced by the filing of a protest pursuant to section 514 of the Tariff Act of 1930, as amended, prior to October 1, 1970, the effective date both of the Customs Courts Act of 1970, Pub. L. 91–271, and the present court rules. In accordance with rule 14.9'(d), such actions are deemed to have had summonses timely and properly filed. Since no summons was actually filed, defendant's motion was, of necessity, directed to the complaint with respect to the adequacy of the claim. An enlightening commentary on the distinct functions of the summons and complaint in this court is to be found in Judge Watson's memorandum opinion in *The Rubberset Company et al.* v. *United States,* 68 Cust. Ct. 370, C.R.D. 72–9 (1972).

and as giving him no authority to remit if the casualty which necessitated the repairs occurred prior to the beginning of the voyage; and (2) finding that the cause of the damage requiring repairs took place before the beginning of the voyage during which the repairs were made.

With respect to plaintiff's claim that the customs officials misconstrued the law, it may be noted that the courts have shown great deference, in matters of statutory construction, to the interpretation given the statute by the officers or agency charged with its administration. *Udall* v. *Tallman*, 380 U.S. 1, 85 S. Ct. 792 (1965) ; *John V. Carr & Son, Inc.* v. *United States*, 69 Cust. Ct. 78, C.D. 4377 (1972), and cases cited therein. Nonetheless, it is equally well settled that agency action, based upon a construction of the law or application of legal standard, is subject to judicial review and will be set aside if erroneous. *Securities and Exchange Commission* v. *Chenery Corporation*, 318 U.S. 80, 63 S. Ct. 454 (1943) ; *Beryllium Corporation* v. *United States*, 449 F.2d 362 (Ct. Cl. 1971) ; *Kovac* v. *Immigration and Naturalization Service*, 407 F.2d 102 (9th Cir. 1969) ; *Williams* v. *Celebrezze*, 243 F. Supp. 103 (E.D. Ark. 1965) ; *Clifton* v. *Celebrezze*, 228 F. Supp. 251 (N.D. Tex. 1964).

Consequently, it has been held that a dispute over the meaning of a statutory term must ultimately be resolved, not on the basis of matters within the special competence of the administrator but "by judicial application of canons of statutory construction." *Barlow* v. *Collins*, *supra*, 397 U.S. at 166. See *Barber* v. *Gonzales*, 347 U.S. 637, 74 S. Ct. 822 (1954) ; *Schenley Industries, Inc.* v. *Fowler*, 275 F. Supp. 356 (D.D.C. 1967). Therefore, when an official is delegated authority to define terms, the definitions he adopts must be open to judicial review to determine whether they are in fact consistent with the statute itself and the intent of Congress. *Hodgson* v. *Stokely-Van Camp*, 330 F. Supp. 253 (D. Minn. 1971). And see *Ellis K. Orlowitz Company* v. *United States*, *supra; Kleberg & Co. (Inc.)* v. *United States, supra; Imbert Imports, Inc., et al.* v. *United States, supra*. See also *Social Security Board* v. *Nierotko*, 327 U.S. 358, 66 S. Ct. 637 (1946).

The cited authorities demonstrate clearly that the Secretary's (or his delegate's) construction of section 466 with respect to the meaning of the term "casualty," and his determination as to the extent of his authority thereunder to remit vessel repair duties are legal questions subject to judicial review.

Turning to plaintiff's claim that the administrative decision as to when the "casualty" occurred was, as characterized in its opposing memorandum, "arbitrary and unreasonable", the court notes the holding in *Waterman Steamship Corp.* v. *United States*, *supra*, that this

court had no authority to review the Secretary's decision not to remit duties under section 466 and to determine whether there was sufficient evidence to support his finding.

Similarly, in *United States* v. *Cottman Co.*, 190 F.2d 805 (4th Cir. 1951), *cert. denied*, 342 U.S. 903 (1952), decided in the early years of the Administrative Procedure Act of June 11, 1946, 60 Stat. 237 (hereinafter APA), the court echoed *Waterman* in precluding review of the Secretary's action under section 466,[4] but employed a different rationale in doing so. It noted that section 10 of the APA, 5 U.S.C. § 1009, provided for review of agency action. However, the court stated at page 808:

> " * * * agency action committed by law to agency discretion is expressly excepted by this section from review under the Act. As we have seen, the remission of duty here was committed to the discretion of the Secretary, and consequently the Administrative Procedure Act can have no application."

Section 10 of that Act, 5 U.S.C. § 1009, provided in pertinent part as follows:

> "§ 1009. Judicial review of agency action.
>
> Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion—
>
> (a) Right of review.
>
> Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.
>
> \*         \*         \*         \*         \*         \*         \*
>
> (e) Scope of review.
>
> So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; \* \* \*."

This section was repealed as part of the general revision of title 5 by Pub. L. 89–554 of September 6, 1966, which substantially incorpo-

---

[4] *Cottman* involved an action to recover on a bond guaranteeing payment of vessel repair duties assessed pursuant to section 466. Appellees had pleaded in defense that they had applied for remission of the duty but had not been accorded a proper hearing by the Secretary of the Treasury, and that the findings and action taken on the application were without legal effect. The district court's order, dismissing the suit upon a holding that appellees had not been accorded a proper hearing upon their application for remission, was reversed by the circuit court and remanded with direction to enter judgment in accordance with the prayer of the complaint. The circuit court also noted (p. 808) that, "If any matter in connection with remission of duties is reviewable for any reason by the courts, the review is in the Customs Court and not in the District Court."

rated its provisions into sections 701 and 706, 5 U.S.C. §§ 701 and 706, to read as follows:

"§ 701. Application; definitions.

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or
(2) agency action is committed to agency discretion by law.

(b) For the purpose of this chapter—

(1) 'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

\*    \*    \*    \*    \*    \*    \*

§ 706. Scope of review.

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

\*    \*    \*    \*    \*    \*    \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; \* \* \*."

The suggestion in *Cottman* that agencies have untrammeled authority to act in areas committed to agency discretion reflected a position that has been increasingly restricted, if not nullified, in recent years as the courts have taken a fresh look at the judicial review provisions of the APA.

Thus, in *Ozbirman* v. *Regional Manpower Administrator, United States Department of Labor*, 335 F. Supp. 467, 470 (S.D.N.Y. 1971), the court observed that although section 701 of the APA substantially excludes jurisdiction to review when agency action is by law committed to agency discretion, nonetheless "such discretion does not immunize administrative action from judicial review, when, for example, there has been an abuse of discretion."

*Ozbirman* cited as authority *Wong Wing Hang* v. *Immigration and Naturalization Service*, 360 F. 2d 715 (2d Cir. 1966), where Judge Friendly, writing for the Court of Appeals for the Second Circuit, considered the effect of section 10 of the APA of 1946 (5 U.S.C. § 1009) on the reviewability of concededly discretionary orders denying suspension of deportation proceedings under the Immigration and Nationality Act. Taking cognizance of the "familiar conflict" between the introductory clause, "Except so far as \* \* \* agency action is by law committed to agency discretion", and subsection (e), which directs the reviewing court to "set aside agency action \* \* \* found to be (1) arbi-

trary, capricious, an abuse of discretion, or otherwise not in accordance with law", Judge Friendly held that the court could review discretionary denials of suspension to determine whether there was an abuse of discretion. Acknowledging the difficulty of defining "abuse", in the absence of standards in the statute itself, he suggested that discretion would be abused if the action or decision—

> "* * * were made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group, or, in Judge Learned Hand's words, on other 'considerations that Congress could not have intended to make relevant.' " 360 F. 2d at 719.

Some courts, for purposes of determining reviewability of discretionary functions, have distinguished between "permissive" and "mandatory" statutes. In other words, if the agency head has the ultimate discretion to refuse to act even if all other statutory requirements are met, the statute is "permissive" and review is precluded; conversely, if the discretion of the administrator is limited to deciding whether statutory requirements have been met, the statute is "mandatory" and the court has jurisdiction to hear a claim by an aggrieved party under the APA. *Ferry* v. *Udall*, 336 F.2d 706 (9th Cir. 1964) ; *Sierra Club* v. *Hardin*, 325 F. Supp. 99 (D. Alaska 1971).

Reliance upon the "permissive versus mandatory" test for reviewability purposes has been all but done away with in the Second Circuit (see *Wong Wing Hang, supra*), and is fast being laid to rest by other federal courts.

For example, the Fourth Circuit, in *Littell* v. *Morton*, 445 F.2d 1207 (4th Cir. 1971), expressly adopted Judge Friendly's formulation in *Wong* for determining the scope of judicial review of discretionary action, and held that the court could consider whether the Secretary of the Interior had abused his discretion in denying compensation for professional services rendered to an Indian attorney, although that decision had been committed by statute to the Secretary.

Also, in *Scanwell Laboratories, Inc.* v. *Shaffer*, 424 F.2d 859, 874 (D.C. Cir. 1970), the District of Columbia Circuit held that review is "expressly provided for" in section 706 of the APA when there is an abuse of agency discretion in actions generally precluded from review under section 701 thereof. The court, however, limited its understanding of "abuse" to cases where there is a "prima facie showing of illegality." 424 F.2d at 875. *Cf. Municipal Light Boards of Reading and Wakefield, Mass.* v. *Federal Power Commission*, 450 F.2d 1341 (D.C. Cir. 1971), wherein the court held, on the basis of longstanding judicial authority, that a refusal by a federal regulatory agency to suspend a rate charge was a nonreviewable exercise of discretionary authority.

Although the Supreme Court has not yet ruled directly on the scope

of judicial review under section 706 of the APA, there is an increasing body of case law in the circuit and district courts holding that, even where agency action is committed to agency discretion, the court will review the action taken if there is a gross or patent abuse of discretion. *Reece* v. *United States*, 455 F.2d 240 (9th Cir. 1972) ; *Ozbirman* v. *Regional Manpower Administrator, United States Department of Labor, supra; Peoples* v. *United States Department of Agriculture*, 427 F.2d 561 (D.C. Cir. 1970) ; *Sugarman* v. *Forbragd et al.*, 405 F.2d 1189 (9th Cir. 1968), *cert. denied*, 395 U.S. 960 (1969) ; *Knight Newspapers, Inc.* v. *United States*, 395 F.2d 353 (6th Cir. 1968) ; *Cappadora* v. *Celebrezze*, 356 F.2d 1 (2d Cir. 1966) ; *Dorothy Thomas Foundation, Inc.* v. *Hardin*, 317 F. Supp. 1072 (W.D. N. Ca. 1970). The Supreme Court, however, has indicated, as in *Citizens to Preserve Overton Park, Inc.* v. *Volpe, supra*, that it would drastically narrow the area of discretionary administrative action exempt from judicial review.

The question, therefore, is not whether judicial review is available, but rather, pertains to the scope of judicial review. However limited in scope, it is clearly consonant with our legal traditions, to grant judicial review of acts committed to agency discretion to determine, pursuant to 5 U.S.C. § 706, whether such discretion has been abused. The court holds that this review extends to decisions made by the Secretary or his delegate under section 466 of the Tariff Act of 1930.

The court has made no decision on the merits of plaintiff's cause of action, and this opinion is not to be construed as having passed upon the correctness of plaintiff's allegations which have been considered in a light most favorable to it solely for the purposes of this motion.

The motion to dismiss the action is denied, and an order will be entered accordingly.