60 CCPA

**IMBERT IMPORTS, INC., et al.,**
Appellants,
v.
The UNITED STATES, Appellee.
Customs Appeal No. 5483.

United States Court of Customs and
Patent Appeals.
April 5, 1973.

Barnes, Richardson & Colburn, New York City, attys., of record, for appellants. David O. Elliott, New York City, of counsel.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Frederick L. Ikenson, New York City, for United States.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and CLARK, Justice (Ret.), sitting by designation.

BALDWIN, Judge.

This appeal is from a judgment of the United States Customs Court, Second Division, Appellate Term, 67 Cust.Ct. 569, 331 F.Supp. 1400, A.R.D. 294 (1971), affirming the judgment of a single Judge sitting in reappraisement, 65 Cust.Ct. 697, 314 F.Supp. 784, R.D. 11718 (1970).

Both courts upheld the imposition, under the Antidumping Act of 1921, as amended, of dumping duties on fourteen entries of portland gray cement exported from the Dominican Republic between October 1962 and the end of March 1963, and entered in the port of San Juan, Puerto Rico. Only the dumping duties are in issue.

The statute principally involved here, section 201 of the Antidumping Act of 1921, as amended (19 U.S.C. § 160) reads in pertinent part as follows:

(a) Whenever the Secretary of the Treasury (hereinafter called the "Secretary") determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States or elsewhere at less than its

fair value, he shall so advise the United States Tariff Commission, and the said Commission shall determine within three months thereafter whether an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation of such merchandise into the United States. The said Commission, after such investigation as it deems necessary, shall notify the Secretary of its determination, and, if that determination is in the affirmative, the Secretary shall make public a notice (hereinafter in this Act called a "finding") of his determination and the determination of the said Commission. * * *

* * * * * *

(c) The Secretary, upon determining whether foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and the United States Tariff Commission, upon making its determination under subsection (a) of this section, shall each publish such determination in the Federal Register, with a statement of the reasons therefor, whether such determination is in the affirmative or in the negative.

The "record" before us is entirely documentary, consisting of certified copies of papers filed with the United States Tariff Commission during an investigation it conducted, and the Commission's "Determination of Likelihood of Injury," TC Publication 87, 28 Fed.Reg. 4047 (1963).

This record reveals that the Assistant Secretary of the Treasury advised the Tariff Commission on January 21, 1963, that portland cement, other than white nonstaining cement, from the Dominican Republic was being or was likely to be sold in the United States at less than fair

value (LTFV). The Commission then issued a notice that it had instituted an investigation "to determine whether an industry in the United States is being or is likely to be injured, or is prevented from being established" by the importation of such merchandise into the United States. 28 Fed.Reg. 882 (1963). The Commission's Determination, *supra,* with Chairman Dorfman dissenting, followed on April 19, 1963.

The majority of the Commission found that imports of Dominican LTFV cement were entered largely at the port of New York and were marketed almost exclusively in the metropolitan area of New York City. This area was held to be a "competitive market area" and the domestic plants that historically supplied portland cement in the area were held to be "an industry" for purposes of the Antidumping Act. Its determination was that an industry in the United States was likely to be injured by reason of importation of LTFV Dominican cement.

The majority found that the Dominican producer had capacity to sell increased quantities of portland cement in the United States; that the Dominican market had provided an outlet sufficient to take only half the potential production of the country's cement plant and the plant has operated with considerable excess capacity even with substantial exports; that, through sales at prices that were below those charges in the home market but sufficiently high to cover out-of-pocket costs and contribute to net return, the producer could achieve more complete utilization of capacity and a lowering of unit costs; and that the very substantial market in the New York metropolitan area constituted a continuing and attractive lure for the producer's management seeking to expand production and reduce costs.[1] It was also the

---

[1]. The Commission also noted that "the instant case represents the second occasion in which the Treasury Department has advised the Commission that Portland cement from the Dominican Republic was being sold in the United States at less than fair value." On the first occasion, in 1962, the Commission accepted certain assurances by the parties involved that continued effort was being made to avoid future sales at LTFV and declined to find that a domestic industry was "likely to be injured." T.C.Pub. 54, 27 Fed.Reg. 3872 (1962).

view of the majority that domestic producers supplying the New York metropolitan area market had operated at about 70 percent of capacity; that not only did sales of imported cement at LTFV tend to repress prices in the marketing area but it was also difficult for domestic producers to compete therewith inasmuch as the price was based not on lower cost but on discrimination; that domestic producers were precluded from making complete use of their productive facilities as they would be able to do in the absence of such competition; and that, because of both legal and economic restraints, domestic producers would be unable to increase volume by resort to the same kind of price discrimination.

Appellants claim that the Tariff Commission's injury determination is invalid. They base that claim on the following contentions:

(1) The Tariff Commission violated its statutory authority in basing its injury determination in part on the mere presence of sales at less than fair value.

(2) The Tariff Commission functioned as an agency within the meaning of the Administrative Procedure Act and its injury determination should be set aside as arbitrary, and

(3) The Tariff Commission's determination, insofar as it encompasses Puerto Rican imports, is in clear and unnecessary excess of the competitive injury found to exist.

The Appellate Term rejected all three contentions in upholding the Commission's determination.

## Opinion

■ As to appellants' first objection, it is apparent that the Commission did not find that sales of the imported cement at less than fair value were *ipso facto* injurious to a domestic industry but instead made a separate determination of injury. It is true that the Commission recognized the LTFV aspect of the sales as one factor involved in its determination. But that amounted to no more than giving weight to a consideration which was reasonably, if not necessarily, related to the conditions which it was required to analyze in determining whether there was a likelihood of injury under the statute. We therefore find that the Appellate Term was correct in holding that the Commission did not err in considering the LTFV aspect of the sales as a factor in its determination.

With regard to the scope of review of the Commission's determination, involved in appellants' charge that the determination here was arbitrary, this court stated in City Lumber Co. v. United States, 457 F.2d 991, 59 C.C.P.A. 89, C.A.D. 1045 (1972):

* * * It is not the judicial function to review or to weigh the evidence before the Commission or to question the correctness of findings drawn therefrom. Kleberg & Co. (Inc.) v. United States, 71 F.2d 332, 21 CCPA 110, T.D. 46446 (1933), compare United States v. George S. Bush & Co., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259 (1940). As stated in *Kleberg,* our review of determinations of injury or likelihood of injury in antidumping cases does not extend beyond determining whether the Commission has acted within its delegated authority, has correctly interpreted statutory language, and has correctly applied the law. As indicated in the *Bush* opinion, "No question of law is raised when the exercise of * * * discretion is challenged."

The statute itself, 19 U.S.C. § 160(a), authorizes the Commission to base its determination upon "such investigation as it deems necessary."

■ Appellants contend that the grounds relied on by the majority of the Commission are shown to be arbitrary, for various reasons, by the facts recited in the dissenting opinion of Chairman Dorfman. For example, appellants challenge the Commission's conclusion that the Dominican producer had

**1192**

continued incentive to sell at less than fair value in the New York area because the price level in that area declined after (1) the supply of Dominican cement ceased and (2) the largest plant in North America came into operation in this same competitive area. Appellants state:

> Examined in the light of the fact that prices in the New York area had fallen sharply since Dominican cement ceased coming in and that the competitive market area was much less attractive than it had been * * *, it is difficult to understand how incentive to ship would not be less than in 1961 where injury was inconsequential or in 1962 when there was no finding of present injury. * * * To base a finding of likelihood of injury, as it comes down to in this case, primarily on the capacity of the facilities of the foreign producer is pure conjecture and inherently arbitrary. [Footnote omitted.]

Suffice it to say that for us to determine that the prices had declined to the point where sales would no longer allow more efficient use of the Dominican facilities or recovery of out-of-pocket costs would require us to weigh and balance the evidence in the same manner as the Tariff Commission, which even appellants admit is not our function. The opening of another New York cement plant merely adds to the store of evidence to be weighed. In short, we find that the findings of the Commission are supported by substantial evidence, and that the factors pointed out in the Chairman's dissent are not of sufficient moment to establish that the decision of the majority was arbitrary.

Accordingly, we are satisfied that the Commission here acted within its delegated authority and correctly interpreted and applied the law. In fact, we think, as did the Appellate Term, that the determination would pass the test as not being arbitrary, an abuse of discretion, or contrary to law, even if the more extensive scope of review under the Administrative Procedure Act (the provision now 5 U.S.C. § 706) were appro-priate, as appellant contends. As it is, we make no express holding with regard to the applicability of that Act.

Finally, appellants urge that, since likelihood of injury was found in terms of factors subsisting in the New York metropolitan area, the imposition of dumping duty on the present importations to Puerto Rico was improper for lack of a reasonable relation to the injury found to exist. The Appellate Term found that the Commission has only the responsibility for making the determination of injury under the statute and does not prescribe the remedial action. Also, it agreed with the trial judge that 19 U.S.C. § 172, which defines "United States" for purposes of 19 U.S.C. § 160 in a manner which includes Puerto Rico, requires that the same duties be collected on importations to Puerto Rico as to the various states. We agree with both views and thus find the Appellate Term did not err on this point.

Accordingly, the judgment of the Customs Court is affirmed.

Affirmed.