NATIONAL MILK PRODUCERS FED-
ERATION et al., Plaintiffs,

v.

George P. SHULTZ, Defendant.

Civ. A. No. 1723-73.

United States District Court,
District of Columbia,
Civil Division.

March 13, 1974.

James R. Murphy, Charles W. Bills, Cross, Murphy & Smith, Washington, D. C., for plaintiffs.

Derek I. Meier, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

This is an action brought by milk producers against the Secretary of the Treasury to force his compliance with the requirements of the Countervailing Duties section of the Tariff Act of 1930, 19 U.S.C. § 1303, as it applies to dairy products imported into the United States. The case is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction and standing. For reasons set forth below, the Court finds that jurisdiction and standing have been established and accordingly, defendant's motion to dismiss is denied.

Section 303 of the 1930 Tariff Act provides in pertinent part:

"Whenever any country . . . shall pay or bestow . . . any bounty or grant upon the . . . export of any . . . merchandise manufactured or produced in such country . . . and such . . . merchandise is dutiable under the provisions of this chapter, then upon importation of any such . . . merchandise into the United States . . . there shall be levied and paid . . . in addition to the duties otherwise imposed by this chap-

ter, an additional duty equal to the net amount of such bounty or grant. . . . The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated."

The complaint alleges that the Secretary has refused since 1968, to honor plaintiffs' repeated requests to enforce this statute with respect to dairy products imported from nations comprising the European Economic Community which pay their exporters direct export subsidies to offset American import duties. As a result, plaintiffs claim they are subjected to unfair competition and injury when foreign exporters are granted subsidies for the express purpose of disposing of dairy products in the United States market.

■ Although jurisdiction has been claimed under 28 U.S.C. §§ 1331, 1332 and 1361, original jurisdiction in the district courts involving customs matters must first be established under 28 U.S.C. § 1340. That section provides:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for . . . revenue from imports or tonnage *except matters within the jurisdiction of the Customs Court.* (Emphasis added.)

Since § 1340 divests this Court of its jurisdiction if jurisdiction exists in the Customs Court, it is readily apparent that in order to avoid a statutory anomaly, § 1340 must be construed as the controlling jurisdictional grant regardless of whether jurisdiction appears appropriate under §§ 1331, 1332 or 1361.

Jurisdiction in the Customs Court is governed by 28 U.S.C. § 1582 which gives that court "exclusive jurisdiction of civil actions instituted by any person

whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or part. . . ."

Protests by American manufacturers pursuant to the Tariff Act of 1930, are governed by 19 U.S.C. § 1516 which permits the filing of protests by American manufacturers who are dissatisfied with the Secretary's determination of an appraised value, classification, or rate of duty for a particular article of merchandise so long as the subject merchandise is of a class or kind manufactured, produced, or sold at wholesale by the protesting manufacturer. 19 U.S.C. § 1516(a).

In United States v. Hammond Lead Products, Inc., 440 F.2d 1024, 58 CCPA 129 (1971), the Court of Customs and Patent Appeals (hereinafter CCPA) ruled that § 1516 did not authorize protests by American manufacturers respecting countervailing import duties.

"All considered, it appears that countervailing duty is a penal exaction that the Congress did not intend the courts to impose, should the Treasury be recalcitrant, in a [§ 1516(b)] proceeding, and is not a 'duty' within the meaning of that section." *Id.* at 1030.

■ The plain effect of *Hammond Lead* is to foreclose protests regarding countervailing import duties by American manufacturers pursuant to administrative procedures set forth in the 1930 Tariff Act. As a consequence, the statutory grant of exclusive jurisdiction conferred upon the Customs Court by 28 U.S.C. § 1582 is inoperative as its activation requires a "protest pursuant to the Tariff Act of 1930" which is unavailable to plaintiffs. Since § 1582 is the only statutory grant of jurisdiction to the Customs Court respecting review of import charges, its unavailability acts to confer original jurisdiction upon this court under 28 U.S.C. § 1340.[1]

---

I. The fact that § 1582 grants "exclusive" jurisdiction to the Customs Court does not mean that court might retain original concurrent jurisdiction in the absence of § 1582. By disallowing jurisdiction in the district

courts whenever the Customs Court has jurisdiction, § 1340 effectively precludes the Customs Court from ever having concurrent jurisdiction with the district courts.

Defendant argues that in deciding *Hammond Lead,* the CCPA did not hold that the Customs Court lacked jurisdiction over the subject matter but only that plaintiff-appellee could not maintain the particular action because the relevant statute (§ 1516) did not authorize it.[2] Defendant urges that the jurisdictional inquiry should examine whether Congress has entrusted to a particular court the whole panoply of litigation. This position is not supported by the plain language of § 1582.

By declaring unavailable the protest system of agency review under § 1516, the CCPA necessarily eliminated its jurisdictional grant under § 1582 since that statutory provision unequivocally predicates jurisdiction on the existence of protests under the 1930 Tariff Act. The conclusion that the CCPA recognized the lack of subject matter jurisdiction in the Customs Court is evidenced by its invitation to other courts to fashion a suitable remedy for the controversy under consideration.[3]

■ Having concluded that § 1340 rests jurisdiction of the instant case with this Court, an inquiry into other jurisdictional grants becomes proper. Sections 1331 and 1332 are clearly inappropriate as a $10,000 controversy has not been alleged and as their availability would add nothing to the jurisdictional grant under § 1340. However the mandamusing provision of 28 U.S.C. § 1361 is a proper ground for jurisdiction.[4]

Should plaintiffs establish that 19 U.S.C. § 1303 imposes non-discretionary duties upon defendant, then for reasons discussed, *infra,* with regard to the issue of standing, those duties would be ones "owed" plaintiffs within the purview of § 1361.[5]

■ Defendant challenges plaintiffs' standing to maintain this action on the ground that as American manufacturers who would not be subject to imposition of countervailing import duties, plaintiffs have no litigable interest in a case concerning another's customs duty liability. This approach to the standing question, however, overlooks the fact that the nub of the controversy involves not the customs duty liability of another, but rather plaintiffs' economic injury resulting from the nonenforcement of protective trade barriers.

In Constructores Civiles de Centroamerica, S.A. v. Hannah, 148 U.S.App.D.C. 159, 459 F.2d 1183 (1972), the Court of Appeals for this Circuit reaffirmed a three part test for standing based in part on Ass'n of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Under that test, a party must first allege "that the challenged action has caused him injury in fact in order to satisfy the Article III requirement that he possess 'the personal stake and interest that impart the concrete adverseness' necessary to the existence of a case or controversy"; second, that the "agency

---

2. *See Hammond Lead* at 440 F.2d 1027, where the CCPA noted that, "we conclude that the Customs Court lacked jurisdiction and reverse on that ground."

3. "Thus it may be that any decision limiting [§ 1516(b)] may correspondingly limit the access of a complaining domestic industry to any kind of court relief. On the other hand, the modern tendency to fashion a remedy for any injury is a strong one, and it could be the regular courts would take jurisdiction in cases outside section [1516(b)], where the domestic industry showed clear illegality and substantial injury. 440 F.2d at 1032.

4. 28 U.S.C. § 1361 provides:
   "The district courts shall have original jurisdiction of any action in the nature of

mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

5. Defendant also claims that the Declaratory Judgment Act, 28 U.S.C. § 2201, which excepts from its reach any case or controversy "with respect to Federal Taxes", precludes this Court from granting plaintiffs' request for a declaration that defendant is required to impose and collect countervailing duties. Since this is a question of available relief, and since the Court has already noted jurisdictional grounds which could support other forms of relief than declaratory relief, this question is not now decided.

has acted arbitrarily, capriciously, or in excess of its statutory authority, so as to injure an interest that 'is arguably within the zone of interests to be protected or regulated by the statute' "; and third, that there is no " 'clear and convincing' indication of a legislative intent to withhold judicial review." 459 F.2d at 1186.

The first requirement that an injury in fact must be alleged is clearly met by plaintiffs' claims of unfair competition and economic injury resulting from foreign imports whose duties are subsidized by grants from their country of origin. It is basic economics that constraints on foreign trade will be undermined to plaintiffs' detriment by permitting foreign exporters to escape the negativing effect of import duties via foreign subsidies.

The second requirement of claiming an interest within the zone of interests sought to be protected by the statute is also met. The basic notion of import tariffs is built upon a protectionist concept favoring domestic industry. As the CCPA noted in *Hammond Lead*:

> "However, the Congress has recognized the strong economic interest of domestic industry in the maintenance of adequate protective duties, and has fashioned a special remedy in limited circumstances." 440 F.2d at 1032.

Since plaintiffs are clearly the very group which § 1303 seeks to protect, their interests certainly fall within the judicially required "zone of interests."

The third requirement of showing an absence of legislative intent to withhold judicial review is equally satisfied. The very existence of § 1516 allowing protests by American manufacturers regarding classifications, valuations, and rates of duty, is self-serving evidence that Congress favored at least partial judicial review of complaints raised by American manufacturers regarding customs matters. The fact that the CCPA in *Hammond Lead* construed this congressional intent as precluding review of the instant claims by the Customs Court can at best be regarded as legislative silence on the availability of such review in district courts. It is not insignificant in this regard that Congress provided for an alternate forum of judicial review in the districts courts under § 1340 when the Customs Court's jurisdiction over customs matters was lacking. A clear and convincing indication of legislative intent to withhold judicial review of any kind in this matter is not evident.

Accordingly, jurisdiction and standing having been established, defendant's motion to dismiss is denied.