**SCM CORPORATION, Plaintiff,**

v.

**The UNITED STATES INTERNATIONAL TRADE COMMISSION et al., Defendants.**

**Civ. A. No. 75–1179.**

United States District Court, District of Columbia.

Aug. 15, 1975.

Eugene L. Stewart, and Frederick L. Ikenson, Washington, D. C., for plaintiff.

Glenn E. Harris, Dept. of Justice, Civ. Div., Customs Section, New York City, Eric B. Marcy, Asst. U. S. Atty., Washington, D. C., for defendants.

Tanaka & Walders by H. William Tanaka and Lawrence R. Walders, Washington, D. C., for Brother Industries, Ltd. and Brother International Corp.

Stitt, Hemmendinger & Kennedy, by John A. Kennedy, Jr., and R. Christian Berg, Washington, D. C., for Royal Typewriter Co., a Division of Litton Business Systems, Incorporated.

## MEMORANDUM OPINION INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

WADDY, District Judge.

Plaintiff is an American manufacturer and seller of portable electric typewriters and portable manual typewriters.

The defendants are The United States International Trade Commission (the "Commission") and the several members thereof, the Secretary of the Treasury (the "Secretary"), the Assistant Secretary of the Treasury responsible for supervising the operation of the United States Customs Service, and the Commissioner of Customs. They are sued in their individual and official capacities.

In this action plaintiff seeks (1) to compel the Commission to set aside a negative determination of injury under the Antidumping Act of 1921 (19 U.S.C. § 160 *et seq.*) and to enter an affirmative determination thereunder; (2) to require the Secretary, the Assistant Secretary and the Commissioner of Customs to instruct the officials of the Customs Service to withhold appraisement and liquidation of certain portable electric typewriters from Japan; and (3) to enjoin the Secretary, Assistant Secretary and the Commissioner of Customs from authorizing or permitting officials of the Customs Service to appraise or liquidate certain entries of portable electric typewriters from Japan.

The case is currently before the Court on motion of plaintiff for a preliminary injunction seeking to restrain the appraisement and liquidation of the challenged typewriters, *pendente lite,* the motion of defendants to dismiss for lack of subject matter jurisdiction, and the respective oppositions of the parties to said motions. Also before the Court are motions of proposed intervenors (exporters and importers of Japanese portable electric typewriters) seeking leave to intervene in the action. Their intervention is opposed by plaintiff. The Court has held the motions to intervene in abeyance pending its determination of the jurisdictional issue but has permitted the proposed intervenors to file briefs as *amici curia.*

The Antidumping Act and the procedures applicable thereunder are accurately described in paragraphs 13 and 14 of plaintiff's Complaint as follows:

"The Antidumping Act is intended to prevent imported merchandise from being sold in the United States at a price less than that at which it is sold at the same level of trade in the country of origin (the 'home market'), or third countries, if an industry in the United States is being or is likely to be injured or is prevented from being established by reason of the above-described importations. The Secretary is charged with the duty of determining whether such sales at less than fair value (hereinafter sometimes referred to as 'LTFV') have occurred.

If the Secretary decides that LTFV sales have occurred, he is required to notify the Commission, which must then determine whether those sales have injured, or are likely to injure an industry in the United States or will prevent an industry in the United States from being established. If the Commission finds the evidence of any of the three (injury, likelihood of injury, or prevention of establishment), it so advises the Secretary. He thereupon is required to publish both his own and Commission's determinations which collectively comprise a 'finding' within the meaning of the Antidumping Act. Once a finding of dumping is published, all imported 'unappraised' merchandise described in that finding, and not entered, or withdrawn from warehouse, for consumption, more than 120 days before the question of dumping was raised by or presented to the Treasury Department is subject to a special dumping duty in the amount of the dumping 'margin'. This margin equals the difference approximately between the price of the imported merchandise sold in the United States and the price of comparative merchandise sold in the home market (or in third countries).

"The Antidumping Act also contains a provisional remedy, to wit, whenever the Secretary has reason to believe or suspect that a class of merchandise is being dumped, he is required to publish notice of that fact in the Federal Register and to authorize the withholding of appraisement as to such merchandise. Appraisement means the ascertainment or determination of value of imported merchandise. Since the enactment of the Customs Administrative Act of 1970, Pub.L. 91–271, § 204(a), which amended 19 U.S.C. § 1500, appraisement merged into liquidation. Liquidation means the final computation or ascertainment of Customs duties on an entry. The withholding of appraisement must continue until the publication of a dumping finding or of a final negative injury determination."

Thus, before a finding of dumping can be made and published by the Secretary pursuant to his duty under 19 U.S. C. § 160(a), two preliminary findings are necessary: (1) a finding by the Secretary that a class or kind of imported merchandise is being sold in the United States at less than its fair value ("LTFV"); and (2) a finding by the Commission that an American industry is being injured, or is likely to be injured, or is prevented from being established by reason of such sales at LTFV ("injury determination"). Only after the publication of such a finding may Customs agents proceed to assess individual entries of merchandise of the class or kind covered by the dumping finding in order to ascertain whether a dumping "margin" exists and thereafter to levy dumping duties accordingly. 19 U.S.C. § 161(a).

The following events led up to the present litigation: On February 14, 1974, plaintiff submitted a complaint to the defendant Commissioner of Customs in which it was alleged that portable electric typewriters from Japan were being sold at LTFV within the meaning of the Antidumping Act. On March 20, 1974, an "Antidumping Proceeding Notice," relating to portable electric typewriters from Japan, was published by the Secretary in the Federal Register.[1] On December 20, 1974, the Secretary published a "Withholding of Appraisement Notice," involving portable electric typewriters from Japan,[2] pursuant to his authority under 19 U.S.C. § 160(b). This application required the withholding of appraisement reports as to the subject typewriters entered or withdrawn from warehouse for public consumption not more than 120 days before the question of dumping was presented

---

1. 39 Fed.Reg. 10456 (1974); Complaint, Exh. A.

2. 39 Fed.Reg. 44054 (1974); Complaint, Exh. B.

to the Secretary or until his further order, or until he published a dumping finding pursuant to 19 U.S.C. § 160(a). On March 20, 1975, a "Determination of Sales at Less Than Fair Value," involving portable electric typewriters from Japan, was published by the Secretary.[3]

The Secretary thereupon notified the Commission of his initial affirmative determination. On April 3, 1975, the Commission published a "Notice of Investigation and Hearing," involving portable electric typewriters from Japan.[4] Pursuant thereto, hearings were held in May 13 and 14, 1975. On June 19, 1975, the Commission determined by a 3 to 2 vote, with one abstention, that an industry in the United States was not being nor likely to be injured nor prevented from being established by reason of portable electric typewriters from Japan sold at LTFV within the meaning of the Antidumping Act.[5]

This negative injury determination by the Commission effectively ended the dumping proceedings under 19 U.S.C. § 160 *et seq*. Failing an affirmative injury determination by the Commission, the Secretary cannot make and publish a finding of dumping and the merchandise under investigation then becomes available for immediate appraisement and liquidation without the assessment for dumping duties. However, plaintiff herein requested that the Secretary not withdraw his "Withholding of Appraisement Notice," or that he otherwise prevent the appraisement and liquidation of the subject merchandise, pending the outcome of litigation involving the negative injury determination. The Secretary denied plaintiff's request and notified plaintiff of his intention to order appraisement and liquidation. Plaintiff thereupon brought this suit and filed its motion for preliminary injunction. Argument on the instant motions was heard by this Court on August 4, 1975, at which time the Court took said motions under advisement. At the Court's request, the Secretary has consented to refrain from ordering appraisement and liquidation of the challenged merchandise pending determination of the instant motions.

The threshold issue herein is whether this Court has jurisdiction over the subject matter of this action. Plaintiff, in its complaint, has alleged several jurisdictional statutes in support of its position that this Court possesses jurisdiction. However, it is well-settled that the jurisdiction of the district courts over customs matters must first be established under 28 U.S.C. § 1340. *J. C. Penney Co. v. United States Department of Treasury*, 319 F.Supp. 1023 (S.D.N.Y. 1970), *aff'd*, 439 F.2d 63 (CA 2 1971), *cert. denied*, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971); *Eastern States Petroleum Corp. v. Rogers*, 108 U.S. App.D.C. 63, 280 F.2d 611 (1960), *cert. denied*, 364 U.S. 891, 81 S.Ct. 222, 5 L. Ed.2d 187 (1960); *National Milk Producers Federation v. Shultz*, 372 F.Supp. 745 (D.D.C.1974).

28 U.S.C. § 1340, "Internal revenue; customs duties," provides:

> "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court."

Jurisdiction of the Customs Court is governed by 28 U.S.C. § 1582 which provides, in relevant part, that:

> "(b) The Customs Court shall have exclusive jurisdiction of civil actions brought by American manufacturers, producers, or wholesalers pursuant to

---

3. 40 Fed.Reg. 12685 (1975); Complaint, Exh. C.

4. 40 Fed.Reg. 15013 (1975); Complaint, Exh. D.

5. The decision of the Commission is attached to the Complaint as Exh. E.

section 516 of the Tariff Act of 1930, as amended."[6]

Actions by American manufacturers, wholesalers and producers, pursuant to § 516 of the Tariff Act of 1930, are governed by 19 U.S.C. § 1516, as amended. Section 1516, as amended by the Trade Act of 1974, P.L. 93–618, provides for two types of actions in the Customs Court by American manufacturers under the Antidumping Act. Pursuant to § 1516(c), an American manufacturer may contest the non-assessment of dumping duties on imported merchandise. Under § 1516(d), an American manufacturer may contest a determination by the Secretary that imported merchandise is not being sold at LTFV.

Plaintiff contends that its complaint is not cognizable under either of the relevant provisions of § 1516, thus making 28 U.S.C. § 1582(b) inapplicable herein, and thereby vesting this Court with jurisdiction pursuant to 28 U.S.C. § 1340. It maintains that this suit seeks only judicial review of the negative injury determination of the Commission relating to a class or kind of merchandise and thereby involves neither review of the non-assessment of dumping duties on specific entries of imported merchandise as provided in § 1516(c), nor does it involve review of a negative LTFV determination by the Secretary as provided in § 1516(d). Plaintiff submits that by specifically providing for review of negative LTFV determinations in the Trade Act of 1974, Congress has manifested an intention to distinguish between review of determinations precedent to a finding of dumping, based on a class or kind of merchandise, and review of the non-assessment of dumping duties on particular entries of merchandise of the class or kind covered by the dumping finding, and to limit the jurisdiction of the Customs Court to these specified situations. Thus, plaintiff submits, the Customs Court is without jurisdiction to enter-

tain actions by American manufacturers seeking review of negative injury determinations of the Commission and can provide no relief to plaintiff. There exists, plaintiff submits, a well-settled exception to the exclusive jurisdiction of the Customs Court over customs matters where the Customs Court can provide no adequate relief to a plaintiff, and this exception is applicable to the present controversy.

Defendants contend that plaintiff has an adequate remedy in the Customs Court under the provisions of § 1516(c), thereby giving that Court jurisdiction to the exclusion of the district courts, in that the Customs Court has jurisdiction to review the negative injury determination of the Commission through the procedure therein set forth for non-assessment of dumping duties, notwithstanding that a different procedure has been set forth in § 1516(d) for contesting negative LTFV determinations.

It is undisputed that, under long-standing doctrine, where the Customs Court is without power to provide adequate relief to a plaintiff in a controversy arising under the customs laws, jurisdiction is properly vested in the district courts. *See, e. g., Penney, supra,* 439 F.2d at 68, wherein the Court stated:

"It is further urged that even acknowledging that generally exclusive jurisdiction over [customs matters] is vested in the Customs Court, there nevertheless exists a recognized judicial exception to this statutory rule when no adequate relief may be obtained in that court. We do not dispute the existence of such an exception. *See, e. g., Waite v. Macy,* 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892 (1918). The exception, however, is inapplicable to the case at bar."

This Court, too, concludes that said exception is inapplicable to the case at bar.

---

6. Actions by foreign exporters and importers are governed by different statutory authority than actions by American manufacturers, wholesalers and producers. See 28 U.S.C. § 1582(a) ; 19 U.S.C. §§ 1514 and 1515.

As hereinafter set forth more fully, the Court finds that plaintiff has an adequate remedy in the Customs Court and concludes therefrom that it is without jurisdiction to entertain the present action.

In *Penney,* plaintiff ("Penney"), *inter alia,* an importer of Japanese television sets, sought to enjoin the Secretary from conducting an investigation into alleged dumping of television sets from Japan. Penney alleged that the LTFV investigation was constitutionally defective in that the proceedings were being conducted in violation of the Due Process Clause of the Fifth Amendment of the Constitution. Penney contended that the Customs Court lacked jurisdiction to rule on its constitutional claims and, assuming such jurisdiction did exist, that the Customs Court was without equitable jurisdiction to grant Penney adequate relief. Thus, Penney contended, if the District Court refused jurisdiction, it would be left without relief. Penney urged that its constitutional claim

"in no way concern[ed] the substantive issues which require the expertise possessed by the members of the Customs Court. [Penney] therefore contended that the policy behind the grant of exclusive jurisdiction [was] absent . . . and that constitutional issues can and should be tried in the district courts." 439 F.2d at 65.

District Judge Weinfeld dismissed the complaint for lack of subject matter jurisdiction. The Second Circuit Court of Appeals affirmed, rejecting each and every argument forwarded by Penney, finding instead in favor of an integral system of customs law justice in the Customs Court. Addressing Penney's

contention that the policy behind the grant of exclusive jurisdiction was absent, the Court stated:

"To be sure, the nature and extent of procedural due process that must be employed in an administrative proceeding is a question with which federal courts of general jurisdiction frequently deal. However, the procedural issues here arise directly from controversies over issues of substantive customs laws. Although it is conceivable that separate courts could deal with the separate procedural and substantive issues involved, such a result would significantly undermine Congress' 'complete system of corrective justice with respect to matters arising under the customs laws.' *Cottman Co. v. Dailey,* 94 F.2d 85, 88 (4 Cir. 1938)." 439 F.2d at 65.

Reviewing the "logic of Congress and . . . the broad national policy" prompting the grant of exclusive jurisdiction to the Customs Court,[7] the Court of Appeals cited several judicial decisions holding that in order for the Customs Court to effectively perform its function, an exclusive grant of jurisdiction to the Customs Court was necessary.[8] The Court found that

"[b]y giving official legislative status to the reasoning of these decisions, Congress expressed its agreement that proper administration of the customs laws requires a complete, integral, smooth-functioning system of customs law justice. Such an end could not be accomplished if customs issues were fractionalized so that the district courts deal with certain questions such as constitutional issues arising out of customs controversies while the Customs Court concerns itself with

7. Customs Court jurisdiction became "exclusive" by amendment to 28 U.S.C. §§ 1582 and 1583 in 1948.

8. In one case therein cited, *David L. Moss Co., Inc. v. United States,* 103 F.2d 395, 397 (C.C.P.A.1939), the Court stated that the Customs Court

"is the tribunal established by Congress in the provision of a complete system of corrective justice for the administration of the customs laws, and questions involving the validity of official action in the imposition and collection of duties are properly cognizable before it to the exclusion of other courts."

the remaining customs issues." 439 F.2d at 66.

Concluding that the Customs Court was vested with jurisdiction to consider Penney's constitutional claim and that public policy favored it, the Court quickly disposed of Penney's argument that the Customs Court could not provide an adequate remedy, since the Customs Court was without equitable jurisdiction to order a new proceeding. The Court expressed its full agreement with Judge Weinfeld that

> "[t]he fact that the controversy may not be ripe for review by the Customs Court [did] not deprive that court of its exclusive jurisdiction and thereby vest [the district court] with jurisdiction." 319 F.Supp. at 1030 (Footnote omitted.); 439 F.2d at 68.

Thus, while recognizing the judicial exception to the Congressional grant of exclusive jurisdiction over customs matters in the Customs Court when no adequate relief may be obtained in that Court, the *Penney* Court disagreed that the absence of equitable power in the Customs Court to order a new hearing justified the invocation of the exception. Instead, the Court found that an adequate remedy did exist, *i. e.*, that Penney could obtain refunds of special dumping duties improperly assessed and paid, should Penney ultimately prevail on the merits of a proper action in the Customs Court. Finding this remedy an adequate means of vindicating plaintiff's rights, the Court held that "the mere fact that more desirable remedies are unavailable [from the Customs Court] does not mean that existing remedies are inadequate." 439 F.2d at 68.

This Court is of the opinion that 19 U.S.C. § 1516(c), as amended in 1974, provides plaintiff herein with an adequate remedy in the Customs Court, thereby excluding jurisdiction in the District Court. However characterized by plaintiff, ultimately at issue herein is the appraised value of individual entries of merchandise and the possible imposi-

tion of an additional duty, making this suit exclusively within the subject matter jurisdiction of the Customs Court. *See Penney*, 319 F.Supp. at 1028.

■ Clearly, where there has been a negative injury determination as to a class or kind of merchandise, no authority exists for assessing particular entries of that type of merchandise for dumping duties. Thus, where an American manufacturer brings an action pursuant to § 1516(c) contesting the non-assessment of dumping duties on a specific entry following a negative injury determination on a class or kind of merchandise, a review by the Customs Court would necessarily involve a review of all aspects of the Commission determination. Importers have long been granted similar review of affirmative determinations in proceedings before the Customs Court, notwithstanding the absence of specific statutory authority for such review. *See, e. g., Imbert Imports, Inc. v. United States*, 475 F.2d 1189, 60 C.C.P.A. 123 (1973); *City Lumber Co. v. United States*, 457 F.2d 991 (C.C.P.A.1972); and cases cited in *Penney, supra*, 319 F. Supp. at 1030 n.30. While plaintiff's complaint may not be ripe for review in the Customs Court under the scheme of review set forth by Congress in § 1516, the Customs Court is not deprived of its exclusive jurisdiction over the subject matter of the controversy. *See Penney, supra*, 319 F.Supp. at 1030; 439 F.2d at 68.

The amendments to § 1516 provided in the Trade Act of 1974 reinforce the conclusion that Congress did not mean to deprive the Customs Court of its exclusive jurisdiction over customs matters. The legislative history makes clear the belief of the House committee that *all* negative injury determinations are reviewable in the Customs Court upon complaint of American manufacturers, producers and wholesalers. Since it believed that all such determinations were already reviewable under existing law, the House committee recommended no explicit language providing for such re-

view. The committee cited an informal opinion of the Secretary, contained in a letter,[9] stating his understanding that such right of review existed. H.R.Report No. 93–571, 93d Cong., 2nd Sess., at 73.

On the other hand, the Senate Committee reporting on the Trade Act sought to explicitly provide for review of negative LTFV determinations by American manufacturers, producers and wholesalers equal to the review rights of importers and foreign exporters. This provision was eventually codified as 19 U.S.C. § 1516(d). Significantly, the Senate Committee specifically expressed agreement with the opinion of the Secretary that existing law provided for judicial review of all negative antidumping decisions in the Customs Court upon complaint of American manufacturers, wholesalers and producers. Sen.Report No. 93–1298, 93d Cong., 2d Sess., at p. 178, U.S.Code Cong. & Admin.News 1974, p. 7186. From this history, the Court perceives no intention on the part of Congress to interfere with the "complete system of corrective justice with respect to matters arising under the customs laws" entrusted to the Customs Court, by carving out the exception plaintiff would today have us recognize, thereby wreaking substantial havoc to this system.[10]

The Court further concludes that plaintiff's remedy in the Customs Court is adequate to vindicate its rights. Plaintiff complains that if this Court fails to restrain the appraisement and liquidation of the typewriters *pendente lite,* any dumping duties improperly not assessed nor collected will be forever lost and plaintiff irreparably injured thereby. However, § 1516 gives plaintiff an extraordinary right to file suits in the Customs Court. Plaintiff's interest lies in the proper administration of the customs laws, not in the assessment and collection of duties. In an analogous situation, the Court of Customs and Patent Appeals had this to say regarding the rights of American manufacturers, wholesalers and producers under the customs laws:

"It is anomalous for anyone but the Government and the taxpayer to have a litigable interest in the assessment of a tax. However, the Congress has recognized the strong economic interest of domestic industry in the maintenance of adequate protective duties, and has fashioned a special remedy in limited circumstances. It is candidly not coextensive with the importer's protest in significant respects, for example, in being denied retroactive effect. It has been held to be '[the] grant of an extraordinary privilege which must be strictly construed against the grantee.' *The Cronite Co., Inc. v. United States,* 38 Cust.Ct. 76, 83, C.D.1847, 150 F.Supp. 754, 761 (1957, per Lawrence, J.)." *United States v. Hammond Lead Products, Inc.,* 440 F.2d 1024, 1032, 58 C.C.P.A. 129 (1971).[11]

Congress has specifically provided in 19 U.S.C. § 1516(e), added in 1974, that

---

9. A copy of this letter is filed as government's hearing Exh. 1.

10. For example, if this Court has jurisdiction to review plaintiff's claim herein, would the Court have pendant jurisdiction over a claim by importers of portable typewriters from Japan, currently moving for leave to intervene herein, that the Secretary's LTFV determination was illegal? What precedential value would the determination of Federal courts of general jurisdiction have in statutory proceedings before the Customs Court reviewing the same matters? Under plaintiff's proposed scheme of review the Court can envision seemingly endless proceedings before both courts.

11. Immediately prior to this quote, the Court in *Hammond Lead* cited *Penney* for the proposition that

"the regular Federal courts will not interfere in customs cases reviewable in the Customs Court, because an importer desires to tailor a remedy more satisfactory to him than the Customs Court affords. A case of an American manufacturer having *no remedy at all* in the Customs Court is greatly different." (Emphasis supplied.)

"notwithstanding the filing of an action" in the Customs Court pursuant to 28 U.S.C. § 2632 (which refers to actions under §§ 1516(c) and (d)), merchandise under challenge "shall be appraised . . ., and the entries liquidated, in accordance with the decision of the Secretary and, except as otherwise provided . . . the final liquidations of these entries shall be conclusive upon all parties." Only following the publication by a Customs Court of its determination adverse to the Secretary may withholding of liquidation take place pending final judicial determination. 19 U.S.C. § 1516(g). It appears therefrom that plaintiff herein seeks more than adequate relief. Rather, plaintiff seeks extraordinary relief, relief which Congress saw fit to specifically deny pending judicial review of antidumping determinations. While it may be that such extraordinary relief is justified in exceptional circumstances, no such circumstances appear in the present action.

Finally, the Court finds that the cases relied upon by plaintiff are inapposite to the present controversy. *Timken Co. v. Simon,* C.A. No. 75–0180 (D.D.C.1975) (Pratt, J.), *appeal pending,* No. 75–1177,[12] and *American Footwear Industries Association v. Simon,* C.A. No. 74–612 (D.D.C. Memorandum Order dated August 13, 1974) (Green, J.)[13] were suits to require administrative action allegedly owed to plaintiffs therein and neither case involved the customs laws as such. *See North American Cement Corp. v. Anderson,* 109 U.S.App.D.C. 162, 284 F.2d 591, 592 (1960);[14] *National Milk Producers Federation v. Shultz, supra.* In *International Union of Electri-*

cal, Radio and Machine Workers v. United States Tariff Commission, C.A. No. 40–72 (D.D.C. Memorandum Order dated December 19, 1972) (Gasch, J.),[15] the Court denied defendants' motion to dismiss and found that an action by the Tariff Commission under the Trade Expansion Act of 1962, 19 U.S.C. § 1901 *et seq.,* was judicially reviewable. If the question of exclusive jurisdiction was raised therein, it was not addressed by Judge Gasch in his opinion. The Court does not consider the *International Union* case as authority for jurisdiction in this Court under the Antidumping Act.

Accordingly, the Court concludes that it is without jurisdiction over the present controversy and this case will be dismissed for want of subject matter jurisdiction. The motions for preliminary injunction and leave to intervene will be denied as being moot.

circuit affirmed the dismissal by the District Court for lack of jurisdiction, finding exclusive jurisdiction for review of such determinations in the Customs Court. Addressing the cases on which plaintiff therein relied, the Court distinguished them on the ground that they "were suits to require administrative action, not to challenge its correctness."

12. Attached as Exh. B to plaintiff's statement of points and authorities in support of its motion for preliminary injunction.

13. *Id.,* Exh. E.

14. In *North American Cement,* plaintiff American manufacturer had challenged the determination of the Secretary that merchandise was not being sold in this country at LTFV. This was before the specific review provision of § 1516(d) was contained in the statute. The Court of Appeals for this

15. Attached as Exh. D to plaintiff's statement of points and authorities in support of its motion for preliminary injunction.